446 So.2d 786 (1984)
Isaac WILSON, Individually and as Administrator of the Estate of the Minor Child, Denita Marie Wilson, Theresa Mitchell Brown, Wife of Melvin Brown, Individually and On Behalf of Her Minor Child, Denita Marie Wilson and Melvin Brown
v.
ALLSTATE INSURANCE COMPANY, Cerdan Monroe, State Farm Mutual Automobile Insurance Company and the City of New Orleans, Department of Streets In Solido.
No. CA 0296.
Court of Appeal of Louisiana, Fourth Circuit.
February 17, 1984.
*787 Bernard J. Rice, III, Gretna, for plaintiffs-appellants-appellees, Theresa Brown, individually and as administratrix of her minor child, Denita Wilson and Melvin Brown.
Donovan & Lawler, Christopher E. Lawler and Marshall G. Weaver, Metairie, for defendant-appellant-appellee, Allstate Ins. Co.
Salvador Anzelmo, City Atty., Douglas P. Wilson, Chief Deputy City Atty., Bernette J. Johnson, Asst. City Atty., New Orleans, for defendant-appellee, The City of New Orleans.
Before SCHOTT, GARRISON and BARRY, JJ.
GARRISON, Judge.
This suit arises out of an intersectional automobile collision which occurred on August 11, 1978. Plaintiff Isaac Wilson was driving his vehicle southbound on Cypress Acres Drive. He was accompanied by guest passengers Theresa Brown, his former wife; Denita Wilson, their minor daughter; and Melvin Brown, Theresa Brown's present husband. Defendant Cerdan Monroe was driving his vehicle eastbound on Vespasian Street, which is the favored street. All parties agreed that there is ordinarily a stop sign at this intersection which controls traffic on Cypress Acres Drive entering the intersection. However, the sign had either been removed or destroyed at the time Wilson approached the intersection and the two-car collision resulted.
Wilson and the three guest passengers filed suit in August, 1979, for injuries sustained in the accident. Defendants named in the suit were Cerdan Monroe; Allstate Insurance Company, Monroe's liability insurer; the City of New Orleans; and State Farm Mutual Automobile Insurance Company, Wilson's uninsured/underinsured motorist carrier. The petition alleged that Monroe was negligent in failing to stop or slow down at the intersection, and that the City was at fault both in failing to replace the missing stop sign and in allowing weeds and shrubs to obscure vision at the intersection.
Monroe, Allstate, the City and State Farm answered the petition and filed third party demands against each other and against Wilson for indemnification and contribution.
In October, 1980, plaintiffs filed an amended petition naming State Farm as an additional defendant in its capacity as Wilson's liability carrier. State Farm filed an exception of prescription, which was referred to the merits of the trial in order to determine whether Wilson was a joint tortfeasor and, thus, a solitary obligor.
The parties stipulated prior to trial that no judgment would be rendered against either insurer in excess of their respective policy limits per person or per occurrence. The trial court rendered judgment granting recovery to the plaintiff guest passengers, denying recovery to plaintiff Isaac Wilson and dismissing all claims against the City. The court reasoned that the negligence of *788 both Wilson and Monroe was "an intervening cause between that of the City, if the City was at all negligent." Defendants Allstate and State Farm were found to be liable in solido to the plaintiff guest passengers. Theresa Brown was awarded $15,000 individually and $15,000 in her capacity as administratrix of Denita Wilson's estate. Melvin Brown was awarded $1,500.
Defendant Allstate appeals the trial court's finding of negligence on the part of its insured, Cerdan Monroe and the court's dismissal of the City of New Orleans. Theresa Brown, both individually and in her administrative capacity, and Melvin Brown appeal only that portion of the judgment which dismisses the City.
On appeal, defendant Allstate argues that:
(1) the trial court erred in finding Cerdan Monroe negligent; and
(2) the trial court erred in failing to find the City of New Orleans liable under either a theory of strict liability or of negligence.
The facts in the case of Pepitone v. State Farm Mutual Automobile Insurance Company, 369 So.2d 267 (La.App. 4th Cir.), writ denied 371 So.2d 1343 (La.1979), are analogous to those in the instant case. In Pepitone, the plaintiff was traveling on a road normally controlled by a stop sign. However, the sign was completely obscured at the time and plaintiff entered the intersection and was involved in a collision which caused his fatal injuries. The decedent's widow and children sued the other drivers' insurers and the public entity for damages. In affirming the dismissal of the plaintiffs' claim against the public entity, the court in Pepitone stated that:
"The duty of a motorist who approaches an uncontrolled intersection with a street of equal dignity is to determine that he can make the crossing safely before proceeding into the intersection, [citations omitted] Therefore, when two cars approach an uncontrolled intersection of local neighborhood streets, neither motorist can reasonably believe he has an unqualified right of way. Accordingly, a motorist approaching an intersection, who actually does not have the right of way, but who is led to believe the intersection is uncontrolled, cannot reasonably be said to have been trapped or deluded into the belief that he had an unqualified right of way." (Emphasis in original) Pepitone, p. 270.
The Pepitone court based its decision of affirming the dismissal of the public entity on the case of Lochbaum v. Bowman, 353 So.2d 379 (La.App. 4th Cir.1977), writ denied 354 So.2d 1380 (La.1978), which states that when a public entity undertakes control of intersecting roads or streets by installation of signs or mechanical devices, the entity then has the duty to maintain the signs or devices only so as not to cause traps or undue dangers to motorists using these roads and streets. The court in Pepitone specifically held that an obstructed stop sign at an intersection of local neighborhood streets of equal dignity does not, as a matter of law, constitute a trap to motorists approaching the intersection on the unfavored street. Therefore, because plaintiff Wilson was traveling on the unfavored street, the trial court in the instant case was correct in finding no liability on the part of the City.
The trial judge found both drivers negligent in failing to keep a proper lookout at the intersection. In his reasons for judgment, the trial judge, citing the case of Poche v. Frazier, 232 So.2d 851 (La.App. 4th Cir.), writ denied 256 La. 266, 236 So.2d 36 (1970), stated that:
"The law is also settled on the principle that when innocent third parties are injured as the result of the collision between two drivers, each of the drivers is deemed guilty of negligence, per se, and the burden of proof falls upon each to exculpate himself to negligence proximately causing the injuries to the third party.... Accordingly, the court finds both drivers have failed to exculpate themselves with negligence under the circumstances."
*789 The appellate court will not disturb the factual findings of the trial court unless the record establishes that the findings are manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). In light of the record and the Pepitone case, we find no manifest error in the trial court's decision to find defendant Monroe negligent and to dismiss all claims against the City.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
SCHOTT, J., dissents.
SCHOTT, Judge, dissenting in part:
In the claim by Wilson's guest passengers the burden of proof was on both drivers to exculpate themselves from negligence. Poche v. Frazier, 232 So.2d 851 (La.App. 3rd Cir.1970) writs refused 256 La. 266, 236 So.2d 36. While each driver argued that weeds and grass interfered with his ability to see the other and Wilson testified that this overgrowth prevented him from realizing he was approaching an intersection the trial judge apparently rejected this explanation. This conclusion is not manifestly erroneous. The trial judge likewise rejected the drivers' explanation of the missing stop sign, but this is a more difficult problem to resolve.
Wilson was proceeding on the unfavored street, that is, the street which the missing stop sign would have faced. Monroe had traveled this route before and assumed that his street was protected by the stop sign. Pepitone v. State Farm Mut. Auto. Ins. Co., 369 So.2d 267 (La.App. 4th Cir. 1979) writs refused 371 So.2d 1343, stands for the proposition that a driver like Wilson proceeding on the unfavored street into an intersection of streets of apparent equal size and dignity gets no consolation from the missing stop sign where there is a collision because he is in the same position as anyone else entering an uncontrolled intersection. Thus, the trial court was correct in concluding that Wilson was negligent and his negligence was a cause of the accident.
However, Pepitone does not apply to Monroe because he was on the favored street and was justified in assuming that drivers like Wilson would yield in the face of a stop sign which had been there before on the occasions he followed this route. Nonetheless, the trial judge found that Monroe was negligent because "had he been keeping a proper lookout, he could have seen whether or not the stop sign was there." I respectfully submit that this is an impossible burden to place on any driver. I cannot conclude that a driver who knows he is on a favored street and who believes from past experience that his street is protected by stop signs facing the inferior intersecting streets has a duty to check at each intersection to determine that each stop sign has not been stolen, removed, or knocked down. There is testimony by Monroe in response to questions by the court (Tr. 169-170) to the effect that he saw the pole without the stop sign attached as he approached the intersection but I cannot conclude from this that he had the time to consider the circumstances and become placed under the legal duty of a driver entering an uncontrolled intersection. Thus, I would reverse the trial court's judgment against Monroe's insurer.
The next question concerns the liability of the City of New Orleans to Wilson's guests under these circumstances. If the city has notice of a missing stop sign and fails to take action to replace it within a reasonable period of time it may be liable to an innocent plaintiff for his injuries. Cangiamilla v. Brindell-Bruno, Inc., 210 So.2d 534 (La.App. 4th Cir.1968). There the stop sign had been knocked down and reported to the city six weeks before the accident sued on. In the instant case there is no evidence as to when the stop sign was removed from the pole. It may have been removed a few minutes before the accident or it may have been days. I am unable to conclude that the city was negligent with respect to the sign.
The final question is whether the city is strictly liable under LSA C.C. Art. 2317 and *790 its application in Jones v. City of Baton Rouge, etc., 388 So.2d 737 (La.1980) and Scott v. State, Dept. of Transp., etc., 392 So.2d 482 (La.App. 1st Cir.1980) writ refused February 6, 1981. In Jones the defective "thing" in the custody of the governmental agencies was a catch basin and its cover. In Scott, the plaintiff's automobile entered a large pothole on a highway bridge so that the bridge was apparently Art. 2317's defective "thing." In Jones v. Sewerage & Water Board of New Orleans, 430 So.2d 1063 (La.App. 4th Cir.1980) writ refused 438 So.2d 573, 574, we found that a useless drain cleanout cover was a defective "thing" for which the governmental authorities were liable under Art. 2317 because this seemed to be a logical extension of Jones v. City of Baton Rouge and was distinguishable from Goodlow v. City of Alexandria, 407 So.2d 1305 (La.App. 3rd Cir.1981).
Goodlow was a policy limitation on the application of Jones v. City of Baton Rouge. The court reasoned that the only way this heavy manhole cover could become a risk was for vandals or thieves to remove it or a heavy vehicle to strike it in some freak manner so as to dislodge it. In balancing this risk against the utility of the manhole and its cover the court concluded that there was no liability on the governmental entity.
I reach the same conclusion in the instant case. This is not the case of a stop sign knocked down sometime before the accident. Nor is there any evidence that it was worn and dilapidated so as to suggest that the sign fell off the pole. Apparently, it was removed, whether by a thief or a prankster, no one knows. The utility of the stop sign is obvious. As a policy determination should the city be liable for this missing stop sign? Should the city be made to inspect on a constant basis to insure the integrity of every one of its thousands of stop signs in order to avoid exposure to claims such as this? Would it be more practical for the city to eliminate most of its stop signs than to face the risk of liability for signs which are removed? In my judgment the imposition of liability on the city in a case like this places an intolerable burden on the taxpayers and I cannot extend Jones v. City of Baton Rouge to cover this situation. Perhaps the Supreme Court would, but, until it does, I conclude that the city is not strictly liable to these plaintiffs under Art. 2317.
Thus, I would reverse the judgment against Allstate Insurance Company and affirm in all other respects.