496 So.2d 1050 (1986)
Carol A. PONTHIER, et al.
v.
The CITY OF NEW ORLEANS.
No. CA-4817.
Court of Appeal of Louisiana, Fourth Circuit.
October 9, 1986.
Writ Denied December 12, 1986.
Porteous, Hainkel, Johnson & Sarpy, James S. Thompson, Wm. Ryan Acomb, New Orleans, for appellee.
Okla Jones, II, City Atty., Don J. Hernandez, Chief Deputy City Atty., Elmer G. Gibbons, III, Deputy City Atty., Drew R. Ballina, Michael L. Martin, Asst. City Attys., New Orleans, for appellant.
Before GULOTTA, SCHOTT, WARD, WILLIAMS and ARMSTRONG, JJ.
GULOTTA, Judge.
In this intersectional accident case, the City of New Orleans appeals from a judgment holding the City 80% liable to an injured driver for failing to maintain a stop sign at the scene of the collision. We reverse.
The accident occurred on October 14, 1982, at the intersection of Robert E. Lee Boulevard and St. Roch Avenue in New Orleans. The favored thoroughfare, Robert E. Lee, consists of two eastbound and two westbound lanes of traffic separated by a 21 foot wide median. The subordinate street, St. Roch runs North-South and has one lane of travel and a parking lane on either side of its 76 foot wide median.
A stop sign normally controlled northbound traffic on St. Roch at the intersection, but was missing at the time of the accident. Carol Ponthier was driving 30-35 mph on St. Roch Avenue in a northerly direction, while the other driver was traveling westbound on Robert E. Lee. Without stopping or looking to the right for cross traffic, Ponthier proceeded into the intersection, crossed Robert E. Lee's two eastbound lanes and its dividing median, and was struck on the right side as she traversed the westbound lanes.
Ponthier and her husband filed suit against the City for failing to maintain the stop sign at the intersection. After a trial on the merits, the judge concluded that the City was 80% liable and plaintiff 20% responsible *1051 for the accident under the doctrine of comparative negligence. In written reasons for judgment finding the City "strictly liable", the trial judge concluded that the City knew or should have discovered that "vandals" had destroyed or moved the sign at the intersection and should have taken action to protect motorists. In apportioning fault between the parties, he noted that the City's failure to maintain the stop sign had lulled the plaintiff into "a false sense of safety and security" in entering the intersection, although plaintiff "should have been alert to what perils she might face" despite her mistaken belief that she was on the favored street.
Appealing, the City raises essentially three arguments: 1) that plaintiff failed to prove the City knew or should have known that the sign was missing; 2) that plaintiff's own negligence or "victim fault" was the sole cause of the accident and precludes her recovery; or 3) that the removal of the sign by "vandals" constitutes "third party fault" likewise relieving the City from responsibility.

NEGLIGENCE
At the outset, we find merit to the contention that plaintiff failed to prove the City's negligence in maintaining traffic control at the intersection.
Norman Benson, an expert traffic engineer for the City, testified that the lines of sight of motorists at the intersection did not warrant a stop sign since a prudent driver should have been able to observe approaching vehicles. He further testified, however, that the City, in its discretion, had placed a stop sign on the left hand side of the northbound lane of St. Roch. Although a New Orleans Levee Board police officer who investigated the accident testified that "technically speaking" there was a yield sign on the neutral ground for northbound traffic on St. Roch "a couple of days before the accident", it is undisputed there was no stop or yield sign at the scene when the collision occurred. Nonetheless, the City had no record of any complaints about a missing sign at the scene before the accident, and the complaint log for the Department of Streets indicates the sign was first reported missing on October 18, 1982, four days after the collision, when it was replaced. Although the trial judge noted that the sign had been removed by "vandals", there is no evidence in the record to explain how the sign disappeared.
Despite the City's duty to maintain its traffic signals, it is not responsible for every accident resulting from a malfunctioning traffic control device. To be liable in negligence, the City must have had actual or constructive notice that a danger existed. Norris v. City of New Orleans, 433 So.2d 392 (La.App. 4th Cir.1983). Under the circumstances of the instant case, where there is no record of complaints prior to the collision or any prior occurrence to put the City on constructive notice of the missing sign, we hold that plaintiffs failed to meet their burden of proof and the trial judge erred in concluding that the City knew or should have discovered that the intersection posed a danger or that "vandals had destroyed or moved the sign...."

STRICT LIABILITY

Victim Fault
In holding the City strictly liable under LSA-C.C. Art. 2317 for 80% of plaintiff's damages, the trial judge cited the landmark case of Jones v. City of Baton Rouge, 388 So.2d 737 (La.1980) and concluded that the City's failure to maintain the stop sign created an unreasonable risk of harm that misled plaintiff into believing she could enter the intersection without stopping. The judge noted that the "topography" of the intersection would have led a reasonably prudent driver to believe that St. Roch was the superior street.
The City contends, however, that it should be exonerated from liability because the missing stop sign did not constitute a "trap" to approaching motorists in this case. In this regard, the City points out that the intersecting streets were of apparent equal dignity and that plaintiff's fault in crossing the uncontrolled intersection inattentively, *1052 without observing and yielding to westbound traffic on Robert E. Lee, was the sole cause of the accident. We agree.
This court has been confronted with the question of a municipality or state agency's liability for intersectional accidents involving missing, obscured, or otherwise defective control devices. In such cases, the crucial inquiry has been whether the defect in the traffic control device was a legal cause of the collision.
Pepitone v. State Farm Mut. Auto. Ins. Co., 369 So.2d 267 (La.App. 4th Cir.1979), writ denied 371 So.2d 1343 (La.1979) involved a collision at the intersection of two-way, two-lane residential streets with a stop sign obscured by foliage. We noted that the critical issue regarding the liability of the parish for failing to maintain the sign was whether the intersection constituted a "trap" to a motorist approaching on an unfavored street. In exonerating the parish in Pepitone, we held that the obstruction of the sign could at most be regarded as leading the motorist on the inferior street into believing that there was no stop sign and that the intersection was uncontrolled. Because the streets were of equal dignity and there were no factors indicating to the motorist that the street on which he was traveling was the favored one, we concluded that he could not reasonably been trapped or deluded into the belief that he had the right of way. Under the facts of Pepitone, we therefore held the motorist had breached his duty to determine (before proceeding into the uncontrolled intersection) that he could make the crossing safely before proceeding into the intersection, and the parish had not breached any legal duty causing the damage.
Similarly, in Brown v. Merz, 429 So.2d 463 (La.App. 4th Cir.1983), writs denied 435 So.2d 434 and 448 (La.1983) we exonerated the City from liability in an intersectional accident case where we concluded the driver's negligence was the sole cause of the accident. In Brown, a tree obscured a stop sign facing motorists on an inferior street intersecting with a two-way major artery. The motorist on the subordinate street failed to heed the stop sign and proceeded into the thoroughfare where her car was broadsided by the second vehicle. Applying Pepitone, supra, we concluded that no trap was created and that the motorist's negligence was the sole legal cause of the accident. Likewise, in Wilson v. Allstate Ins. Co., 446 So.2d 786 (La.App. 4th Cir. 1984), we applied the Pepitone rationale to an intersectional collision involving a missing stop sign, and affirmed a trial court's decision exonerating the City and finding both drivers liable for failing to keep proper lookouts.
In Victor v. Saporito, 444 So.2d 672 (La.App. 4th Cir.1984), however, the City was held strictly liable in an intersectional collision involving a misplaced stop sign. Citing Pepitone, and Morgan v. Allstate Ins. Co., 393 So.2d 324 (La.App. 1st Cir. 1980), we noted that in such intersectional collisions courts have found the municipality and the negligent driver on the inferior road solidarily liable to the motorist traveling on the superior road who had the right of way. In Victor, the plaintiff had been traveling on the superior road and would have enjoyed a safe right of way if the City had not been negligent in failing to maintain the stop sign on the inferior road. See also McCrary v. Persons, 446 So.2d 508 (La.App. 4th Cir.1984).
Applying the above jurisprudence, as a matter of law, we do not place liability on the City in the instant case.
The evidence establishes that the missing stop sign did not constitute a "trap" lulling Ponthier into a false sense of security that she had the right of way. Both streets of the intersection were wide, divided thoroughfares of apparent equal dignity. Although the median dividing St. Roch was approximately three times the width of that dividing Robert E. Lee, the travel lanes of Robert E. Lee were 37 feet wide on either side of its median and accomodated two lanes of traffic in either direction, whereas St. Roch was 27 feet wide on either side of its median and had one travel lane in either direction. Indeed plaintiffs allege in their petition that both streets "appear to be *1053 similar avenues of travel". Significantly, there was a large open lot to Ponthier's right and she could have clearly seen traffic approaching to her right on Robert E. Lee if she had been attentive. Under these circumstances, Ponthier, who was traveling on the inferior street, had a duty to determine whether it was safe to cross favored Robert E. Lee Boulevard before proceeding into the uncontrolled intersection.
Applying the Pepitone rationale, we therefore conclude the absence of the stop sign at St. Roch was not the legal cause of the collision on these streets of apparent equal dignity. Rather, Ponthier's inattentiveness in proceeding into the intersection without first determining whether it was safe to do so was the sole legal cause of the collision. Accordingly, we do not hold the City liable.
We recognize this accident occurred after the adoption of the comparative negligence doctrine in Louisiana. Nonetheless, though victim fault may no longer be a complete bar to recovery in strict liability cases,[1] a plaintiff still bears the burden of proving causation in a strict liability case, i.e., the claimant must prove that under the circumstances the "thing" presented an unreasonable risk of harm which resulted in the damage. Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982). In the instant case, where there was no "trap" to motorists approaching the intersection on St. Roch, we conclude that the missing stop sign did not create an "unreasonable risk of harm" within the meaning of LSA-C.C. Art. 2317. Furthermore, because plaintiff's inattentiveness (in proceeding through the uncontrolled intersection) was the sole legal cause of the accident, we conclude she is 100% at fault under a comparative negligence analysis. Confronted with analogous facts in Davis v. Eckert, 454 So.2d 275 (La.App. 4th Cir.1984), we exonerated the City from strict liability in an intersectional collision involving a defective traffic signal light and apportioned fault at 50% each to two motorists whose combined negligence had caused the accident.
Accordingly, we conclude the trial judge erred in apportioning fault between the City and plaintiff under these circumstances.

Third Party Fault
Having concluded that plaintiff's fault was the sole legal cause of the collision, we find no necessity to discuss the issue of "third party" fault as a defense to strict liability.

DECREE
Accordingly, the judgment in favor of plaintiffs and against the City of New Orleans is reversed and set aside. Judgment is now rendered in favor of the defendant, the City of New Orleans, and against plaintiffs, Carol A. Ponthier and Roy L. Ponthier, Jr., dismissing their suit at their costs. Costs to be paid by plaintiffs.
REVERSED AND SET ASIDE; RENDERED.
WARD, J., concurs.
WILLIAMS, J., dissents.
WARD, Judge, concurring.
In my opinion the absence of a stop sign at the intersection is not a defect. Under a theory of strict liability plaintiffs must prove that the thing which caused the damage was in the custody of defendant, that the thing had a defect or vice and that the injury was caused by the defect. Jones v. City of Baton Rouge, 388 So.2d 737 (La. 1980). Without proof of a defect, strict liability does not arise. This conclusion renders a strict liability analysis unnecessary.
The only question therefore is the negligence of the City. A municipality has a duty to correct a dangerous street or highway condition not caused through the negligence of its employees only if it had notice of the condition. Jones, supra. Ponthier and her husband proved neither that the City had notice of the missing stop sign nor *1054 that the City's employees had removed it. Hence, I agree with the majority that the City was not negligent.
WILLIAMS, Judge, dissenting with reasons.
The trial court made a determination that St. Roch was the dominant street where it intersects Robert E. Lee Boulevard. Although as a trier of fact I may not have made a similar finding, I do not think that we can hold that it was manifest error for the trial court to do so. Because of the determination that plaintiff was travelling on the superior road, Victor v. Saporito, 444 So.2d 672 (La.App. 4th Cir.1984) controls, and the City, therefore, should be strictly liable.
The majority's opinion is obviously an attempt to circumvent the effects of strict liability. Although these effects may be harsh, the remedy should be legislative, not judicial.
NOTES
[1] See Bell v. Jet Wheel Blast, Div. of Ervin Ind., 462 So.2d 166 (La.1985) and its progeny.