543 So.2d 603 (1989)
Clarence VANTRIGE, et al.
v.
LLOYD'S OF LOUISIANA INS. CO., et al.
Eric BRADLEY, et al.
v.
Elaine Williams DOUGLAS, et al.
Louise LEWIS, etc.
v.
Elaine Williams DOUGLAS, et al.
Nos. 88-CA-1373 to 88-CA-1375.
Court of Appeal of Louisiana, Fourth Circuit.
April 27, 1989.
Louis A. Gerdes, Jr., New Orleans, for plaintiffs/appellants.
Thomas L. Gaudry, Jr., Michael G. Fanning, Windhorst, Gaudry, Talley & Ranson Gretna, Brad G. Theard, Young, Richaud, Theard & Myers, Okla Jones, II, City Atty., Don J. Hernandez, Val K. Schewich, III, *604 Belhia V. Martin, New Orleans, for defendants/appellees.
Before BARRY, KLEES and BECKER, JJ.
BECKER, Judge.
In these consolidated suits arising out of a two car intersectional collision involving a missing stop sign, appeals have resulted from the trial court's judgment finding one driver's negligence the sole cause of the accident. This court concludes that both drivers, the plaintiff and the City of New Orleans, were liable. We reverse and recast the judgment.
The collision occurred at approximately 8:30 p.m. on February 18, 1984 at the intersection of North Johnson and Desire Streets. Desire Street is a two way, favored street, intersected by North Johnson, a two way cross street controlled by stop signs. Both streets appear of equal dignity.
The right quarter of the automobile driven by Robert Douglas, south bound on Desire Street, struck the driver's side of the vehicle driven by Eric Bradley, an off duty Jefferson Parish Sheriff's Deputy, east bound on North Johnson. Bradley was attempting to turn right or south bound onto Desire Street when the accident occurred. The stop sign normally controlling the intersection on the southwest corner of North Johnson was missing. After impact, the Douglas vehicle ended up in the yard of a local resident.
Clarence Vantrige, a guest passenger in the Douglas vehicle, filed suit naming Robert Douglas, his insurer Lloyds of Louisiana, The City of New Orleans, Harry Lee, Sheriff of Jefferson Parish and Eric Bradley as defendants. Harry Lee, Sheriff of Jefferson Parish and Eric Bradley answered and filed a third party demand against Robert Douglas, Lloyds of Louisiana Insurance Company and the City of New Orleans. The City also answered and filed a third party demand against Sheriff Lee and Eric Bradley. Robert Douglas and his insurer did the same. Plaintiff also added as a defendant Sheriff Lee's liability carrier Zurich American Insurance Company. After a trial on the merits the trial judge awarded plaintiff $150,000.00 for pain and suffering, $25,000.00 for past and future medical expenses and $60,000.00 for past and future loss of income. In her reasons for judgment, the trial judge concluded the sole legal cause of the accident was the negligence of Deputy Eric Bradley and that the plaintiff Robert Douglas was free from fault.
Defendants Eric Bradley, Sheriff Lee and Zurich American Insurance Company appeal the judgment from the trial court on liability and damages.

EVIDENCE
On February 18, 1984 at approximately 8:30 p.m., Clarence Vantrige, after leaving work earlier that day went out for the evening with two of his friends, Robert Douglas, who drove the three in his own vehicle, and Pervis Wright. The trio drank beer that evening and were on their way to another restaurant and bar in the city as they drove down Desire Street southbound. As Mr. Douglas drove, Clarence Ventrige, sat in the passenger side of the car and Mr. Wright in the rear of the car, all three conversing as they approached North Johnson on Desire Street.
That same evening, Mr. Eric Bradley, an off duty Jefferson Parish Sheriff's Deputy, was off work and was driving the Jefferson Parish Police car assigned to him. He was heading toward his brother's house on Pauline Street with his daughter and his niece. His brother had just moved and he was not familiar with the area. At about 11:45 p.m. Bradley decided to avoid a backed up intersection by turning one block early and taking the next available parallel street. Bradley turned east onto North Johnson for one block and was approaching its intersection with Desire Street.
Desire Street and North Johnson where they cross each other are both two way black top thoroughfares of roughly the same width. Desire Street runs northsouth; North Johnson runs eastwest. Stop signs on northeast and southwest corners normally control the traffic on North Johnson, *605 however the sign on the southwest corner was missing on the evening of February 18, 1984. According to an accident report taken thirty-three days prior to the accident the stop sign was missing from its location even at that time. Mr. Bradley testified that as he approached Desire Street on North Johnson, intending to turn right, he did not observe a stop sign but, being unfamiliar with the area he cautiously entered the intersection "rolling" through it, looking to his left, then his right and, as he was going into the intersection, left again. This time, when he looked he saw Mr. Douglas's automobile about a car length away, approaching rapidly. Mr. Bradley then testified that he accelerated, hoping to get out of the way but was struck along the left side of his vehicle.
Mr. Douglas was a long time resident of the area familiar with the intersection. He took no precautions as he approached the intersection and was driving at approximately 30 miles per hour along Desire Street when he suddenly observed the white police car, only a few feet away emerge from North Johnson. He then swerved in a vain attempt to avoid the collision but still struck Mr. Bradley's car, bounced off and ended up in the yard of a local resident. A New Orleans Police Department Officer testified that he investigated the accident and observed a number of opened and unopened beer cans in the Douglas car. He further testified that when he spoke with Mr. Douglas about the accident, he noticed a strong smell of alcohol on his breath and observed that Mr. Douglas slurred his words and walked unsteadily. He noted that the stop sign controlling North Johnson on the southwest corner, facing the direction Mr. Bradley had been traveling, was missing.
About ten days after the accident Clarence Vantrige saw Dr. Henry Evans who diagnosed a lumbar sprain and a contusion of the right leg and treated him conservatively until July 25, 1984 when he determined that Mr. Vantrige was asymptomatic and discharged him.
On October 23, 1984, three months after being discharged by Dr. Evans, Mr. Vantrige returned complaining of further, more severe back pains. Dr. Evans, believing that he accomplished all he could, referred Mr. Vantrige to Dr. R.C. Llewellyn, a neurosurgeon. Dr. Llewellyn subsequently performed a partial diskectomy on Mr. Vantrige on February 14, 1985 at New Orleans Methodist Hospital. Mr. Vantrige was examined following the operation and continued to complain of back pain. His last visit to Dr. Llewellyn was in December 1985 and his complaints were the same.
Although, further diagnostic studies are necessary to determine whether another diskectomy is necessary, Dr. Llewellyn believes that sometime in the future Mr. Vantrige will be able to work again.
Dr. Carl Culicchia also examined Mr. Vantrige on two occasions and testified that he felt that Mr. Vantrige had no neurological disability. Mr. Vantrige continues to complain of back pain so severe that he cannot work, in particular as a carpenter or carpenter's helper, his former trade, and frequently cannot sleep, remaining awake until 2:00 o'clock in the morning. Mr. Vantrige last worked as a carpenters helper. The number of days worked varied during his employment which spanned part of 1982, all of 1983 and part of 1984 until the accident. In 1982 and 1983 he earned $3.00 an hour from which his employer made no deductions. This was raised to $4.00 an hour in 1984. Mr. Vantrige filed no income tax return in 1983 and did not report his income in 1982 so there is no way to determine how much he actually made. Mr. Vantrige worked forty hours a week when the work was available but often only worked a couple of days a week or not at all. His last full time employment ended in mid 1982 when he left the Print Supply Company where he had worked as a shipping and receiving clerk.
A vocational rehabilitation specialist testified that he felt the Mr. Vantrige would be able to find work in various areas at minimal wage in the future.

*606 DOUGLAS'S NEGLIGENCE
We reject the finding of the trial court that Douglas was free from fault. Although it is true that he was traveling on the favored street and could therefore reasonably assume that a vehicle crossing Desire Street would stop in obedience to traffic signs, the evidence supports the conclusion that Douglas was driving under the influence of alcohol and traveling in excess of the posted speed limit. Testimony from the investigating Police Officer revealed that he observed opened beer cans in the Douglas vehicle after the accident. In addition the officer testified that Mr. Douglas's speech was slurred, his breath had the strong odor of alcohol, and he refused to take the field sobriety test.
Mr. Douglas testified that he had been drinking with his friends on the night of the accident, and had personally consumed at least two quarts of beer. He further testified that he was driving in excess of the posted speed limit by some five to ten miles per hour at the time of the accident.
We feel that in light of the evidence, the trial court manifestly erred in finding no negligence on the part of Mr. Douglas.

BRADLEY'S NEGLIGENCE
The trial court in its reasons for judgment stated:
"the court looked at that line of cases which began with Peptone [Pepitone ] v. State Farm Mutual Insurance Company, 369 So.2d 267 (La.App. 4th Cir.1979) which involved a collision at the intersection of two residential streets, where the stop sign was obscured by foliage. The court must determine whether the failure to maintain the stop sign constituted a trap for a motorists approaching on an unfavorable street.
The absent of a stop sign in this instance could only lead Deputy Bradley to believe that he was approaching an uncontrolled intersection because Desire and North Johnson were residential streets of apparent equal dignity. There were no factors which would indicate to a motorist on North Johnson that he was traveling on a favored street. Deputy Bradley could not reasonably have been trapped or deluded into the belief that he had the right of way. He was only entitled to presume that this was a uncontrolled intersection, which at this case, it was his duty to look both ways and ascertain whether he could traverse the intersection safely, before he entered it.
From all the evidence, the court is convinced that Deputy Bradley did not look to his left before he entered Desire Street. Had he done so he would have seen the on coming Douglas vehicle.
Applying Peptone [Pepitone], the court concludes that the sole legal cause of this accident was the negligence of Deputy Bradley."
While this court agrees with the conclusion that Bradley was at fault we do not feel that he was the sole legal cause of the accident.
The evidence is undisputed that the stop sign controlling the southwest corner of the intersection was missing at the time of the accident. However, this fact did not relieve Bradley of his legal duty to treat the intersection as uncontrolled and therefore first determine whether he could safely enter the intersection before attempting to turn.
Every driver who approaches an uncontrolled intersection of a street of equal dignity has some degree of duty, depending upon the circumstances, to proceed cautiously and determine before entering the intersection whether he can safely cross. A determination of fault in such a collision is made by examining the conduct of the motorist under all the circumstances and facts of each case including the consideration of direction or right of way. Zemo v. Louviere, 349 So.2d 420 La.App. 4th Cir.1977.
If Bradley had come to a complete stop and more carefully looked down Desire Street to his left he could have seen the Douglas vehicle in time to avoid the collision.
Accordingly, we conclude that Bradley's negligence was a concurrent legal cause of the accident.

*607 CITY'S NEGLIGENCE
The evidence is uncontroverted that (1) the stop sign was missing from its location at the time of the accident. (2) that Bradley failed to stop (3) that a Police Officer had observed and noted that the same sign was missing one month and three days earlier on a prior accident report and (4) that the City had failed to inspect and replace the sign prior to February 18, 1984.
To be liable in negligence the City must have had actual or constructive notice that a danger existed. Ponthier v. City of New Orleans, 496 So.2d 1050 (La.App. 4th Cir. 1986); writ denied 498 So.2d 15 (La.1986); Norris v. City of New Orleans, 433 So.2d 392 (La.App. 4th Cir.1983).
A parish acts negligently when a defective traffic control device causes injury and the parish has either actual or constructive notice of the defective condition and fails to correct it within a reasonable time. Netterville v. Parish of East Baton Rouge, 314 So.2d 397 (La. App. 1st Cir.1975), writ denied, 318 So. 2d 58 (La.1975).
In Daigle v. Hanson, 476 So.2d 953 (La. App. 1st Cir.1985) a stop sign had been missing two weeks prior to the accident and the court found that the parish had constructive knowledge of the hazardous condition and did not remedy it. Thus, the parish was negligent and liable for damages.
The investigating officer testified that after the accident he noticed that the stop sign was missing from its location. He further testified that a local resident had informed him that the sign had been knocked down from a previous accident and never replaced.
Defendants also placed into evidence a New Orleans Police Department accident report dated January 15, 1984 of an accident at the same location which noted that the same stop sign was missing. It appears that the City had been on notice that the stop sign had been missing for at least four weeks and three days from the date of the previous accident report. The officer making the report and the report itself are instrumentalities of the City sufficient to give notice to the municipality of a dangerous condition that needs to be corrected.
In three recent intersectional collisions in this court involving missing or obscured stop or yield signs, under certain circumstances factually similar to the instant case, we have held the City liable. See McCrary v. Persons, 446 So.2d 508 (La. App. 4th Cir.1984); Victor v. Saporito, 444 So.2d 672 (La.App. 4th Cir.1984); Bessard v. Marcello, 467 So.2d 2 (La.App. 4th Cir. 1985), writs denied. 472 So.2d 38, 39, 40 (La.1985).
From the evidence we conclude that the City breached its legal duty to maintain the sign despite constructive notice of its absence, which constitutes legal fault notwithstanding the later negligence of both drivers.

VANTRIGE'S NEGLIGENCE
Another issue on appeal is whether or not the plaintiff, Vantrige, assumed the risk of injury by riding in a vehicle with a driver he knew had been drinking.
It is fundamental that in order to assume a risk, one must knowingly and voluntarily encounter a risk which caused him harm. Plaintiff must understand and appreciate the risk involved and must accept the risk as well as the inherent possibility of danger because of the risk. McInnis v. Fireman's Fund Insurance Company, 322 So.2d 155 (La.1975).
Knowledge is the main stay of this defense and this court will input knowledge to a plaintiff not because he was in the position to make certain observations, but only when the plaintiff actually made those observations and from those observations should reasonably have known that risk was involved. Bass v. Aetna Insurance Company, 370 So.2d 511 (La.1979); Prestenbach v. Sentry Insurance Company, 340 So.2d 1331 (La. 1976).
In the case at bar the plaintiff was definitely aware that Douglas, the driver, could be intoxicated because they were drinking together before the accident. The *608 plaintiff was clearly in a position to observe the driver's drinking and could readily determine that there might be some risk in traveling with an intoxicated driver. Therefore we find the plaintiff knew and understood the risk involved in riding with a intoxicated driver. Thus, he should bear the responsibility for his decision.

DAMAGES
We find there was no abuse of discretion or manifest error in the award of damages as determined by the trial court.

APPORTIONMENT OF FAULT
In the light of the forgoing determinations of negligence we now turn to the issue of apportioning of fault.
We find fault to be apportioned in the following manner: Douglas 25%, Bradley 25%, City 40% and Vantrige 10%.

DECREE
Accordingly, the judgment rendered on December 14, 1987 and appealed in these consolidated cases is:
REVERSED IN PART; MODIFIED IN PART; AFFIRMED IN PART.