BARRY, Judge.
The issue in this intersectional auto accident concerns the defendants’ liability. After a bench trial judgment was rendered in favor of the plaintiff and against the defen *263 dant-driver and the City of New Orleans “jointly and solidarity” for $139,712.00 plus costs.
On July 7, 1983, Carolyn Jones was driving on South Dupre St. and stopped at Gravier St. for a stop sign. Her niece, Lisa Robertson, was a guest passenger. Jones could not see whether it was safe to proceed across Gravier St. because cars were parked to the corner on Gravier. Jones attempted to cross and an accident occurred between her and a police vehicle driven on Gravier St. by Lathan Williams, an auto mechanic for the police department.
Jones sued Williams and the City for personal injuries. The City’s reeonvention against Jones was withdrawn.
Jones testified that when she stopped for the stop sign she looked left but could not see oncoming traffic because cars were parked on Gravier St. up to the intersection. She “inched” the ear forward until the front end was two to two and one-half feet beyond the parked cars, stopped, and was hit by another vehicle and spun around. Although she claimed she did not see the other vehicle prior to impact and was “dazed” afterward, she testified that the other vehicle was black. Jones examined a photocopy of a photograph of a car and said that the vehicle was not the one in the accident.[1] She pointed out that the vehicle in the photocopy was too light and did not have damage to the front end.
On cross-examination Jones testified that she did see the other vehicle “maybe a half of a second” prior to impact, but it was too close to avoid the accident.
Guest passenger Robertson and Kristeen Beique, an eye-witness, generally corroborated Jones’ version of the facts. Beique, a Sheriff’s Office employee, had just driven past the same intersection. She parked and walked to South Dupre, looked both ways, and after she “checked” Jones’ car, began to cross. Beique heard and saw a “revving” vehicle on Gravier moving at more than 25 m.p.h. and faster than other vehicles on the street. The vehicle hit Jones’ car causing it to spin around, then hit a parked car and a brick wall. Beique said the vehicle on Gravier had room in the left lane to avoid hitting Jones’ car. She did not state that the vehicle had time to avoid the accident.
Beique testified that she did not see any damage to the side of the other vehicle. She noted that sheriff’s cars were usually parked on Gravier where Jones said her view was blocked.
Bobby Nathan, an “administrative analyst in the position of parking manager” for the City, testified for Jones. In July, 1983 Nathan had just transferred to the police department and started the boot immobilization program for the City. In October, 1983 his duties encompassed enforcement of parking regulations.
Nathan testified there was a parking problem on South Dupre and Gravier in July, 1983 and the area was part of a designated “enforcement beat.” There was also a “running battle” regarding who was allowed to park in that area. The controversy involved the N.O.P.D. (which was primarily responsible for writing parking tickets) and Criminal Court judges who wanted jurors to be permitted to park in “enforcement zone parking only.” Nonetheless, according to Nathan, 186 tickets were written in the area between June and December, 1983. It is unclear whether that was the total tickets written by all agencies or those by Nathan’s staff. He noted that twenty-two agencies, including N.O.P.D., had parking ticket responsibility.
On cross-examination Nathan testified that “parking within 20 feet of a corner” is a violation which the City enforced and the City towed vehicles for parking too close to a corner.
Defendant Williams testified that he had been sent to the N.O.P.D. body shop at Gravier and South White to pick up a car. He said he was driving in the middle of Gravier St. at 25 m.p.h. when his unmarked police car was struck on the right passenger side. The impact caused the police car to strike a parked car, but he denied that *264 his car struck a brick wall. He said the police car was light blue, contradicting Jones and Robertson’s testimony. He also testified he did not see Jones’ car prior to the accident.
Williams claimed the photocopy was a copy of a photograph of the car which he was driving on the day of the accident, and accurately depicts the damage to the car.
Paul Clement, a property damage appraiser and defense witness, identified the photocopy as a copy of a photograph he had taken as part of an appraisal of the police car. The appraisal showed damage to the sides of the car, which is consistent with Williams’ testimony. Clement could not say that the car in the photocopy was involved in the accident.
At the time of the accident Clement’s job was to appraise cars for N.O.P.D. as soon as a police report was complete. Clement said the only knowledge he would have of an accident was the police report. Defense counsel’s attempt to introduce the police report was disallowed because it lacked the proper evidentiary foundation.
A court of appeal may not set aside the trier of fact’s finding unless it is manifestly erroneous or clearly wrong. When testimony conflicts, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel its own evaluations and inferences are as reasonable. Rosell v. Esco, 549 So.2d 840 (La.1989).
La.R.S. 32:123 provides in pertinent part that
A. Preferential right of way at an intersection may be indicated by stop signs or yield signs.
B. Except when directed to proceed by a police officer or traffic-control signal, every driver and operator of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the cross walk on the near side at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection.
After having stopped, the driver shall yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard.
Motorists on favored streets may assume that a driver approaching an intersection on a less favored street will yield the right of way. A driver who stops at a stop sign has not discharged his entire duty until making certain it is safe to proceed, especially when entering a blind, intersection. Clements v. Allstate Ins. Co., 383 So.2d 1375 (La.App. 4th Cir.1980), writ refused, 385 So.2d 793 (La.1980). Nonetheless, preferences on favored streets created by statutes, signals or signs do not relieve the driver on the favored street from exercising ordinary care. Banks v. LeVasseur, 488 So.2d 1275 (La.App. 4th Cir.1986). When that driver reasonably realizes that the driver on the less favored street will continue across the intersection, then the favored driver has a duty to take reasonable precautions to avoid the accident.
The trial court’s reasons for judgment found Jones acted reasonably by attempting to cross Gravier St. If our review were de novo we would ascribe negligence to Jones since she proceeded “two to two and one-half feet” past the parked cars on Gravier, well into the favored street. Had she stopped sooner she may have been able to see without being vulnerable to traffic on favored Gravier St. See e.g. Clements v. Allstate Ins. Co., 383 So.2d 1375 (La.App. 4th Cir.1980), writ refused, 385 So.2d 793 (La.1980).
As for Williams, the trial court stated: Additionally, the Court concludes that the defendant — driver, Lathan Williams, was not operating his vehicle in keeping with the standard required of him, under the circumstances. It is more likely than not that he was driving at least twenty-five (25 MPH) miles per hour. He stated he was maintaining such a speed, while three (3) other witnesses urged that his speed exceeded the posted limit. Even if *265 he was travelling within the speed limit he was (or should have been), aware of the conditions prevalent in that area. As a city mechanic, he frequently shuttled vehicles through that intersection. Just because he had the ‘right-of-way’, he cannot drive through, with impunity. All drivers are required to operate their vehicles in a reasonably safe manner, observing the prevailing conditions. Mr. Williams failed to meet that standard.
Only Beique’s testimony, not “three other witnesses”, indicates Williams was proceeding more than 25 m.p.h. Importantly, there was no testimony regarding the speed limit or that proceeding more than 25 m.p.h. was illegal or was unreasonable.
The record does not contain any evidence to support the trial court’s finding that Williams “frequently shuttled vehicles through that intersection.” Thus, there is no basis for the inference that Williams should have known it was a blind intersection and failed to act to avoid an “inching” : car.
There is nothing in the record which proves that Williams caused or had the last clear chance to avoid the accident. Jones said she moved forward into Gravier St. until the front end of her car was two to two and one-half feet beyond the parked cars, a distance well into the favored street, and did not see Williams’ vehicle until “maybe a half of a second” prior to impact, though she was looking for oncoming traffic.
Williams testified he did not see Jones’ car prior to the accident. Jones’ and Williams’ testimony indicate Williams did not see Jones’ car until impact when the accident was unavoidable. The trial court manifestly erred in finding Williams at fault. Therefore, liability by the City cannot be predicated on the doctrine of respon-deat superior.
THE CITY’S LIABILITY
To establish the City’s negligence the plaintiff must show that the enforcement (or lack thereof) of parking violations at this intersection created an unreasonable risk of injury which resulted in damage, that the City knew or should have known of that risk, and the City failed to render the intersection safe or take adequate steps to prevent the damage caused by the failure to adequately enforce parking violations. See Kent v. Gulf State Utilities Co., 418 So.2d 493 (La.1982).
For strict liability under La.C.C. Art. 2317[2], the plaintiff must prove that the thing which caused the damage was in the custody of the defendant,[3] that the thing had a vice or defect (i.e., that it occasioned an unreasonable risk of harm or injury) which caused the injury. Baker v. Sewerage & Water Board, 466 So.2d 720 (La.App. 4th Cir.1985); Loescher v. Parr, 324 So.2d 441 (La.1975).
The only difference between negligence and strict liability theories is that under strict liability the plaintiff is relieved of proving that the custodian knew or should have known of the unreasonable risk of injury. Marziale v. Maney, 529 So.2d 504 (La.App. 4th Cir.1988), writ denied, 533 So.2d 22 (La.1988).
Nathan testified there was an awareness of parking problems in this area leading to its designation as an “enforcement beat.” Based on this testimony, we assume Jones established that the City knew there was a problem because cars parked up to the intersection and obstructed the view from Dupre St. of approaching traffic on Gravier. We turn our analysis to whether there was a vice or defect or whether under these circumstances the City was aware of but failed to correct an unreasonable risk of harm.
Jones bears the burden of establishing this unreasonable risk of harm. Kent v. Gulf State Utilities Co., 418 So.2d 493 *266 (La.1982). The unreasonable risk of harm criteria is not a simple rule of law which can be mechanically applied. Rather, it requires a balancing of claims and interests, a weighing of the risk and the gravity of harm, and a consideration of individual and societal obligations and rights. Landry v. State, 495 So.2d 1284 (La.1986); Entrevia v. Hood, 427 So.2d 1146 (La.1983).
Nathan, plaintiffs only non-fact witness, stated unequivocally that the City always enforced the “no parking within 20 feet of a corner” ordinance[4] and towed vehicles which parked too close to a corner. He also testified that 186 tickets were written during the six months (including the date of the accident) from June to December, 1983.
While this appears to be a relatively small number for a six month time period in a problem area, Nathan stated that at the time of the accident, 22 agencies shared ticket writing responsibility. No one established that these were the only tickets written for that area.
It should be noted that in testimony regarding his qualifications, Nathan mentions the City’s efforts to make traffic and parking ordinance enforcement more effective and efficient. The City was attempting to consolidate parking ticket authority and relieve N.O.P.D., which had primary responsibility for ticket writing.
This record has no evidence which establishes that there was an unreasonable risk of harm and does not support liability of the city under a negligence or strict liability claim.
We note that liability was established as to the parties who parked illegally and obstructed visibility in violation of New Orleans City Code § 38-286.47(6) (1986). That ordinance prohibits parking within twenty (20) feet of an intersection and is aimed at preserving visibility at intersections.
The judgment of the trial court is reversed. Judgment is rendered in favor of the defendants, Lathan Williams and the City of New Orleans, dismissing Carolyn Jones’ suit with prejudice.
REVERSED.

. It was stipulated that the photocopy was from a photograph of a car.

. Effective July 12, 1985, La.R.S. 9:2800 requires actual or constructive notice before liability will be imposed under La.C.C. Art. 2317 against a public entity for damage caused by the condition of things within its care and custody. This took effect after the date of this accident.

. The City does not dispute this element of the strict liability claim.

. New Orleans City Code § 38-286.47(6) (1986).