560 So.2d 999 (1990)
Bruce ALEXANDER and Alvin Brooks
v.
Lonnie RIVERS, Cumis Insurance Company and the City of New Orleans.
Lonnie RIVERS
v.
Bruce ALEXANDER, the Delight Wholesale Company and Northbrook Property and Casualty Ins. Co.
Nos. 89-CA-1411, 89-CA-1412.
Court of Appeal of Louisiana, Fourth Circuit.
April 26, 1990.
*1000 Robert O. Homes, Jr., Gulf port, Darleen M. Jacobs, New Orleans, for appellants.
Belhia V. Martin, Asst. City Atty., New Orleans, for City of New Orleans.
David J. Mitchell, Dan R. Dorsey, Porteous, Hainkel, Johnson & Sarpy, New Orleans, for appellees.
Before KLEES, BYRNES and PLOTKIN, JJ.
*1001 PLOTKIN, Judge.
On May 16, 1984, Lonnie Rivers was proceeding north on North Galvez Street in New Orleans. As he approached the intersection of North Galvez with Barracks Street, an ice cream van operated by Bruce Alexander was travelling east on Barracks Street at a high rate of speed. The stop sign which should have controlled eastbound traffic on Barracks Street was missing. Rivers' car and the ice cream van collided in the intersection. Rivers, Alexanders, and Brooks, a passenger riding with Alexander, were injured.
Alexander and Brooks filed suit against Rivers and his insurer, Cumis Insurance Company, and against the City of New Orleans. Rivers and Cumis answered with a third party demand against the City and Delight Wholesale, the owner of the ice cream van. Rivers filed suit against Alexander, Delight Wholesale, and its insurer, Northbrook Property and Casualty Insurance Company. The two cases were consolidated for trial. Trial was held before a Commissioner who dismissed the petitions of Alexander and Brooks against Rivers and the City, awarded damages of $198,730 to Rivers against Alexander, Delight Wholesale, and Northbrook Insurance, and an award of $7,088 to Cumis for medical payments and property damage paid to Rivers. The trial court accepted the Commissioner's Report, entered judgment for Rivers and Cumis against Alexander, Delight Wholesale and Northbrook, and dismissed the City of New Orleans. Alexander, Delight Wholesale and Northbrook filed a motion for a new trial, which was denied. Alexander, Delight Wholesale and Northbrook have appealed. Rivers and Cumis have cross-appealed.
ISSUES ON APPEAL:
1. Liability of the City
The record shows that North Galvez was the favored street. Traffic on Barracks Street at the North Galvez intersection was supposed to be controlled by two stop signs, one for eastbound and one for westbound traffic. The sign that should have controlled eastbound traffic had been missing for some time. The westbound sign was damaged in the accident. The City repaired it the day of the accident. The City replaced the missing eastbound stop sign one month after the accident.
Edward Hernandez of the Department of Streets testified that the City had regular procedures for sign maintenance. All complaints received were filed in a complaint log. Records of repairs were entered by intersection and by sign number. According to these records, no complaints had been received concerning the missing stop sign until a month after the accident. The day a complaint was received, the stop sign was replaced. The date of replacement was affixed to the back of the sign itself.
The City had a ten-year plan of sign maintenance which had been discontinued. Under this plan, each sign would be checked every ten years. The record shows that the missing sign in question had been checked in August 1975. Even if the ten-year plan had still been in effect, the sign would not have been checked again until August 1985, more than a year after this accident occurred.
The evidence is uncontroverted that the stop sign was missing at the time of the accident. However, for the City to be liable in negligence, it "must have had actual or constructive notice that a danger existed." Vantrige v. Lloyd's of Louisiana Ins., 543 So.2d 603, 607 (La.App. 4 Cir.1989); LSA-R.S. 9:2800(B). The evidence shows that the City did not have actual knowledge that the stop sign was missing before the accident occurred.
Constructive notice is defined as the "existence of facts which infer actual knowledge." LSA R.S. 9:2800(C). Since the City no longer had regular maintenance programs, it could not have constructive knowledge based on its maintenance programs. But since the City has undertaken to regulate traffic, it has assumed a duty to maintain the instrumentalities of traffic regulation, that is, traffic lights and stop signs. A city cannot avoid negligence by simply not having a program of regular maintenance. A city can be found to have constructive notice and, consequently, liability *1002 for negligence, if the plaintiff can establish from witnesses and other evidence that the stop sign had been missing for a significant period of time. A plaintiff has the burden of proof to show that a missing stop sign has "been down for such a length of time and in such circumstances that the city should have been aware of the problem through due diligence." Boudoin v. City of Kenner, 556 So.2d 123, 125-26 (La.App. 5 Cir.1990). In this case, the plaintiff did not meet this burden and did not show how long the stop sign had been down. Under these circumstances, the trial court did not err in holding the City not liable for negligence.
For the City to be found strictly liable when a stop sign is missing and an accident occurs, it must be proven first that the missing stop sign constituted a "trap," lulling the driver into a false sense of security that he or she had the right of way, and secondly, that the missing stop sign was the proximate cause of the accident. Ponthier v. City of New Orleans, 496 So.2d 1050, 1052-53 (La.App. 4 Cir.), writ denied, 498 So.2d 15 (1986). In this case, there is no evidence that the missing stop sign constituted a "trap," or that the absence of the stop sign caused the accident. On the contrary, testimony confirming Alexander's reckless driving and excessive rate of speed indicates that a stop sign might have had little or no effect. Thus the trial court was correct in finding that the City is not liable for this accident.
2. Comparative Negligence
a. The Fault of Alexander
The Commissioner found Alexander completely at fault for the accident and assigned no contributory negligence to Rivers. There is considerable evidence of Alexander's fault. The police officer who arrived at the scene cited Alexander for reckless operation of a motor vehicle. Alexander pleaded guilty to the charge and paid a fine. Several witnesses testified that Alexander was speeding and ringing the bell to attract customers. Under the law, North Galvez was the favored street and Alexander should have yielded to traffic on North Galvez. Alexander also should have yielded to a vehicle on his right. Thus the fault of Alexander is attested by at least three violations of law.
b. The Fault of Rivers
Rivers was travelling at less than the speed limit on the favored street. He testified that he knew the intersection was dangerous and approached the intersection cautiously. Although not required to do so, Rivers brought his car to a stop and looked to see what traffic was coming on Barracks Street. He saw the ice cream van about a block away. He then proceeded to enter the intersection and collided with the van. Rivers testified that he entered the intersection because he thought the van had time to stop and presumed it would stop because North Galvez was the main street. He also said that the van should have stopped because his car was to its right. Rivers testified that he had lived near the intersection for about five years, but did not pass through it every day. He did know that there was no stop sign on the eastbound side of Barracks.
A house on the corner was partially obstructing the view. A driver entering a partially obstructed intersection has a high duty of care, especially when that driver does not have the right-of-way. Conerly v. South Central Bell Telephone Co., 557 So.2d 1041 (La.App. 4 Cir.1990). This would impose a higher duty of care on Alexander, who did not have the right-ofway, but does not resolve the issue of the fault of Rivers. A motorist with the legal right of way on a favored street does have the duty of exercising ordinary care. Jones v. Williams, 557 So.2d 262 (La.App. 4 Cir.1990).
The issue is whether Rivers was legally at fault in proceeding to enter the intersection after he had seen the ice cream van coming toward him on Barracks Street at a high rate of speed. Rivers clearly had the right of way to proceed. A motorist driving
at a reasonable speed on a right-of-way street ha[s] a right to assume that a *1003 driver approaching from a less favored street will stop for the intersection and yield the right-of-way; the motorist on the right-of-way street has the right to indulge in this assumption until he sees, or should see, that the other car has not observed or is not going to observe the law.
Willis v. Everett, 359 So.2d 1080, 1085 (La. App. 3 Cir.), writ denied, 362 So.2d 800 (1978), quoting Welch v. Welch, 169 So.2d 713 (La.App. 4 Cir.1964). Rivers testified that he saw that the van was speeding a block away.
Q: You stopped at that corner and you looked to your left and you saw this van a block away?
A: Approximately.
Q: And you don't know the speed, it was coming fast?
A: It was coming fast.
Q: And when you saw it coming, you started across?
A: Knowing that he had time to stop.
Tr. I, 279.
Q: Now, how fast did that vehicle appear to be going to you?
A: A high rate of speed.
Q: A high rate of speed. Your best estimate was about 65 or 70 miles an hour, wasn't it?
A: That was what I said. That's speculating because I wasn't there to ...
Q: Right. But at least as of the point where you're sitting there at this intersection looking to the left, you thought you saw a vehicle coming towards you at 65 to 70 miles an hour, right?
A: Yes, it was coming.
Tr. III, 598.
Speeding is a violation of law. Therefore if Rivers believed the ice cream van was speeding, he lost the right to assume that the van would stop at the intersection. Thus Rivers was at fault in entering the intersection after he saw the van speeding toward him. We reverse on the issue of comparative negligence and find the fault of Rivers to be ten percent of the total fault; that of Alexander to be ninety percent. Rivers was comparatively negligent because, after he stopped, looked, and saw the van coming toward him at a high rate of speed, he nevertheless proceeded forward from a position of safety into a position which a reasonably prudent driver would know or should have known would be one of danger.
3. Liability of Delight Wholesale
Delight Wholesale contends that it is not the employer of Alexander and therefore is not liable for damages. The record shows that Alexander perceived Delight to be his employer. Delight "leased" Alexander the van, but no consideration was paid. Alexander could not use the van for any purpose except selling ice cream. Delight assigned a route to Alexander where he was to sell ice cream. At the end of the day, Alexander returned and was paid a commission on ice cream sold. He was not paid a salary. After the accident, Delight's insurance company paid Alexander's medical bills.
Master and employers are liable for the damage caused by their servants and employees in the exercise of the functions in which they are employed. La. C.C. art. 2320. A servant or employee is a person employed to perform services in the affairs of another and who with respect to the conduct of the performance of such services is subject to the other's control or right to control. Ermert v. Hartford Ins. Co., 559 So.2d 467 (La.1990). A business enterprise cannot justly disclaim responsibility for accidents which may fairly be said to be characteristic of its activities. The latter is determined by whether the employee's tortious conduct was reasonably foreseeable. Id. The fact that the primary motive of the employee is to benefit him or herself does not prevent the tortious act of the employee from being within the scope of employment. If the purpose of serving the employer's business actuates the employee to "any appreciable extent," the employer is liable. Id.
While the evidence is not unambiguous as to the relationship between Alexander *1004 and Delight Wholesale, there is sufficient basis in the record for the trial court to find that Delight Wholesale was Alexander's employer. The court of appeals must give deference to the trial court's finding of fact. This finding was not clearly erroneous. Rosell v. ESCO, 549 So.2d 840, 844-5 (La. 1989).
4. Prejudice
Appellants contend that the Commissioner showed prejudice in favor of Rivers and his counsel. A close examination of the trial record has revealed no clear evidence of prejudice. The issue seems to have been more a question of trial tactics and the skills of respective counsel. This court finds no prejudice in the admission of evidence and several instances where evidence was admitted or excluded over the objection of Rivers' counsel. There is no indication in the record that the judgment was skewed as a result of bias. Even if it had been, this Court is correcting any error in the findings of the trial court. This issue is without merit.
5. Quantum of Damages
Appellants raised the issue on appeal that the quantum of damages awarded was too high. Appellee raised the issue on cross-appeal that the quantum award was too low. Appellee briefed both issues together. This court will consider both contentions at the same time.
An award of damages cannot be disturbed absent an abuse of discretion. In such a case it can only be raised or lowered to the highest or lowest amount reasonably within the discretion of the trial court. Cheatham v. City of New Orleans, 378 So.2d 369, 376 (La. 1979), quoting Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
Appellants challenge the credibility of Rivers and his doctors as to the extent of his injuries. The findings of the Commissioner are well supported by the record and are not clearly erroneous.
Appellants also dispute the expert testimony of Dr. Wolfson as to Rivers' lost future income based upon pre-tax earnings. An economist's use of pre-tax earnings can be offset by other considerations. Cheatham, supra, at 378. In this case, the trial court used the lower figure which allowed for Rivers to earn at minimum wage. Dr. Wolfson also testified that the deduction of taxes would amount to about ten percent of the award and substantiated a loss of $37,381 in personal services, which was not included in the award. This omission should more than offset any error in using pre-tax income to compute the lost future earnings at $77,632. In some circumstances it can be an abuse of discretion to rely on post-tax calculations in computing future lost earnings. Sorrells v. Eddie Knippers & Associates, 544 So.2d 556, 562 (La.App. 1 Cir.1989).
The trial court awarded Rivers $90,000 in general damages. In analyzing whether the trier of fact abused its discretion, an examination of prior awards serves a limited function as an aid to determining whether an award is disproportionate to past awards for similar injuries. Reck v. Stevens, 373 So.2d 498, 501 (La.1979).
An extensive review of past general damage awards for fractured jaws, loss of teeth, carpal tunnel syndrome and knee injuries, shows that the trial court's award in this case is not disproportionate. We affirm the general damage award.
The awards for past medical expenses and past loss of wages are supported by the evidence in the record and are not an abuse of discretion. These awards are likewise affirmed.
In this case, there was, however, an abuse of discretion when the trial court awarded nothing for future medical expenses when the evidence showed that there was a high probability that Rivers would require surgery on both his hand and knee. Dr. Seltzer testified that these surgeries could cost $8,250. The evidence was such that it was an abuse of discretion not to award anything for future medical expenses since this evidence was uncontroverted and justified. On the issue of future *1005 medical expenses we reverse and award Rivers $8,250.
ISSUES ON CROSS-APPEAL
Appellee has raised two additional issues on cross-appeal concerning sanctions. These issues have not, however, been briefed. Under Uniform Rule 2-12.4:
All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed.
Therefore this court will not consider these issues on cross-appeal.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed, except to amend the award to Rivers by increasing his damages in the amount of $8,250. We reverse the judgment on liability by finding that Rivers was ten percent comparatively negligent, which will reduce the total award by a like amount. The plaintiff is entitled to interest and costs of these proceedings in the reduced amount from the date of judicial demand.
AFFIRMED IN PART, AMENDED IN PART, REVERSED IN PART.