CARTER, Judge.
This is an action for damages arising out of an automobile accident near the intersection of Oregon Street, North Alexander Street, and La. Highway 1 in West Baton Rouge Parish.
At this intersection, La. Highway 1 is a divided, four-lane highway running north and south. The northbound lanes and the southbound lanes of La. Highway 1 are separated by a median. North Alexander Street is a divided, two-lane service street, which parallels La. Highway 1. North Alexander Street and the northbound lanes of La. Highway 1 are separated by a thirty-two foot wide median. Oregon Street is a two-lane street which runs east and west and intersects both La. Highway 1 and North Alexander Street. North Alexander Street is the favored street at this intersection. The traffic exiting the northbound lane of La. Highway 1 is controlled by a yield sign, and the traffic on Oregon Street is controlled by stop signs. The following illustration depicts the intersection as it existed at the time of the accident:
[[Image here]]
FACTS
On August 9, 1982, plaintiff, Barbara A. Watson, was traveling north on La. Highway 1, preparing to exit onto Oregon Street. As plaintiff executed a right turn onto Oregon Street, she failed to yield the right of way and collided with a vehicle traveling south on North Alexander Street. As a result of this collision, plaintiff claims to have sustained serious personal injuries.
On July 5, 1983, plaintiff filed suit for damages against the State of Louisiana, through the Department of Transportation and Development (Department), the Parish of West Baton Rouge, the West Baton Rouge Parish Police Jury, and the Town of Port Allen. The Department answered plaintiffs petition denying plaintiffs allegations and alleging comparative negligence. The Department also filed third party demands against the Parish of West Baton Rouge, the West Baton Rouge Police Jury, and the Town of Port Allen. By judgments dated August 14,1984, the original and third party demands against the *430 Parish of West Baton Rouge, the West Baton Rouge Parish Police Jury, and the Town of Port Allen were dismissed pursuant to motions for summary judgment. Thereafter, Louisiana Health Service and Indemnity Company, d/b/a Blue Cross of Louisiana, filed a petition of intervention, seeking reimbursement of $36,191.35 in medical expenses paid pursuant to a health insurance policy.
After trial, the trial judge determined that, although the design in signing the intersection did not create an unreasonable risk of harm, at the time of the accident the yield sign was twisted and could not be seen easily in time to avoid the accident. The trial judge determined that the misplacement of the yield sign contributed to the accident and that, as a result, the Department was liable for plaintiffs damages. The trial judge also determined that plaintiff was at fault in the accident and that her fault also contributed to the accident. The trial judge apportioned the fault as follows:
1) Department 70%
2) Plaintiff 30%
In assessing damages, the trial judge, after acknowledging that plaintiff was a difficult witness, determined that the evidence established that plaintiff’s initial cervical injuries and subsequent cervical problems were caused by the August 9, 1982, automobile accident. The trial judge awarded $300,000.00 in general damages and $45,480.28 in special damages. Of the $45,480.28 in special damages, intervenor was awarded $35,694.37, and plaintiff was awarded the remaining $9,785.91. All damage awards were reduced by plaintiffs percentage of fault.
From this judgment, the Department, the plaintiff, and the intervenor appeal. The Department assigns the following errors:
1.The trial court erred in assessing seventy percent (70%) of fault against the Department of Transportation and Development and only thirty percent (30%) of fault against the plaintiff where the evidence presented showed that the accident occurred solely because of the grossly negligent acts of the plaintiff.
2. The trial court erred in finding the accident in this case caused the injuries allegedly incurred by the plaintiff and the medical expenses resulting therefrom.
3. The trial court committed manifest error in awarding the excessive sum of $300,000.00 in general damages and $45,480.28 in special damages.
Plaintiff assigns the following errors:
1. The trial court erred in finding Barbara A. Watson contributorily negligent in causing this accident and, therefore, in finding her thirty (30%) percent at fault in causing the accident.
2. The award of Three Hundred Thousand and No/100 ($300,000.00) Dollars in general damages by the trial court was deficient.
Intervenor assigns the following error:
The trial judge erred in allocating thir-. ty percent of the fault for this accident to the plaintiff in this case.
LIABILITY
A governmental authority that undertakes to control traffic at an intersection has a duty to the motoring public to exercise a high degree of care in maintaining the devices installed for traffic control. Lochbaum v. Bowman, 353 So.2d 379 (La. App. 4th Cir.1977), writ denied, 354 So.2d 1380 (La.1978). A governmental authority may be held liable under theories of negligence (LSA-C.C. art. 2315) and/or strict liability (LSA-C.C. art. 2317). The distinction between recovery under these theories is that under strict liability the plaintiff is relieved of proving that the owner or custodian of the thing which caused the damage knew or should have known of the risk involved. Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982); Burge v. City of Hammond, 509 So.2d 151 (La. App. 1st Cir.1987), writ denied, 513 So.2d 285 (La.1987). Under both theories, plaintiff must still prove that: (1) defendant owned or had custody of the thing which caused the damage; (2) the thing was de *431 fective in that it created an unreasonable risk of harm to others; and (3) causation. Burge v. City of Hammond, supra; Farr v. Montgomery Ward and Company, Inc., 430 So.2d 1141 (La.App. 1st Cir.1983), writ denied, 435 So.2d 429 (La.1983).
NEGLIGENCE
To be liable in negligence, a governmental authority must have had actual or constructive notice that a danger existed. Ponthier v. City of New Orleans, 496 So. 2d 1050 (La.App. 4th Cir.1986), writ denied, 498 So.2d 15 (La.1986); Norris v. City of New Orleans, 433 So.2d 392 (La. App. 4th Cir.1983).
In the instant case, the evidence established that the yield sign controlling the traffic exiting the northbound lane of La. Highway 1 had been damaged prior to plaintiff’s accident. The record demonstrated that the yield sign was twisted in a northwesterly direction and was not easily visible to a motorist exiting La. Highway 1 onto Oregon Street until the driver began to negotiate the turn. However, the record is devoid of any evidence establishing the length of time the yield sign had been damaged or the Department’s actual or constructive knowledge of such damage. There were no records of complaints prior to the instant collision or prior occurrences to put the Department on notice of the damaged sign. We find that the plaintiff failed to meet her burden of proving that the Department knew or should have known that the yield sign had been damaged and, as a result, that the intersection posed an unreasonable risk of harm. See Ponthier v. City of New Orleans, supra.
STRICT LIABILITY
This court frequently has been confronted with the question of a municipality or state agency’s liability for intersectional accidents involving missing, obscured, or otherwise defective control devices. In such cases, the crucial inquiry has been whether the defect in the traffic control device was a legal cause of the collision.
Generally, a governing authority has a duty to maintain devices installed for traffic control so as not to create traps or undue dangers. Peterman v. City of Hammond, 378 So.2d 181 (La.App. 1st Cir. 1979). However, a governing authority does not have a duty to guard against a motorist entering what appears to be an uncontrolled intersection without determining that it is safe to do so. Peterman v. City of Hammond, supra; Pepitone v. State Farm Mutual Automobile Insurance Co., 369 So.2d 267 (La.App. 4th Cir.1979), writ denied, 371 So.2d 1343 (La.1979).
In Morgan v. Allstate Insurance Company, 393 So.2d 324 (La.App. 1st Cir.1980), the court carefully examined the jurisprudence and determined that two basic situations arise frequently in missing, damaged, or obstructed traffic sign cases. The court accurately and succinctly noted that:
On the one hand there is the situation where the plaintiff is traveling on the road normally controlled by the stop sign. The plaintiff is involved in an in-tersectional collision and sues the public entity for his damages. The courts have refused to allow recovery in this situation, reasoning that plaintiff’s breach of his duty in failing to approach the intersection with due care is the sole proximate cause of the accident. Although the public entity’s negligence may well be a cause in fact the courts obviously feel it inequitable to allow a negligent plaintiff to recover in this situation. Pepitone, supra; Peterman, supra.
On the other hand, there are situations where the plaintiff is traveling on the superior road and rightfully has the right of way. The defendant is traveling on the inferior road with the missing stop sign and proceeds through the intersection without stopping. As to the innocent plaintiff, courts have been willing to find solidary liability on the part of the negligent driver and the negligent public entity. Funderburk, supra; Willis v. Everett, 359 So.2d 1080 (La.App. 3d Cir.1978). The courts reason that if the stop sign had been in its proper place the driver would have heeded it. The exception to this rule seems to be the Loch- *432 man situation where the defendant driver is aware of a malfunctioning signal and, is, therefore, on notice that he must take extreme care in crossing the intersection, yet fails to do so. [393 So.2d at 327-328]
In the instant case, the collision occurred in an intersection which was controlled by a damaged yield sign. From the facts adduced at trial, the intersection appeared to plaintiff to be an uncontrolled intersection.
At trial, plaintiff testified on direct examination as follows:
Q. Did you notice any type of regulatory signs at the intersection that you were proceeding to take a right at?
A. I've thought about that a lot and, no, sir, I did not. I assumed I had the right-of-way, I was making a right hand turn, I locked in my rearview mirror. Like I say, I was concerned with being rear-ended. I turned right onto Oregon, on the service road I saw a car.
Q. To your left or to your right?
A. To my left. And as far as I know there was nothing to my right.
Q. Um-hum.
A. I said probably twelve car lengths, but I know it was closer to me than the building that's on the left.
Q. You saw this automobile?
A. I saw the car.
Q. Did you stop for this vehicle?
A. No, I did not. I had no reason to stop; I assumed I had the rightof-way.
Q. You presumed that that vehicle was going to have to yield to you or to stop?
A. Yes, sir.
Q. Tell the Court what happened then? A. The car, to reach me as fast as he did, would have been traveling at a great speed. I just could not believe the car was going to run into me; he just simply did not stop. There was no place for me to be.
Under cross examination, plaintiff also testified as follows:
Q. Are you willing to testify here today that you had never been through this particular intersection before?
A. Not to my knowledge.
Q. You’re not really sure, though?
A. If I went through that intersection I don’t think I was driving ever before. Usually when we came here Mr. Dominguez’s wife drove us here.
Q. The reason you would have been coming to Port Allen a great deal would have been to come to this courthouse—
A. Right.
Q. —wouldn’t it, that’s what you were doing over here?
A. Yes.
Q. You feel that you always took this intersection right out here and never took the one before. Is that correct?
A. Yes. I’m not going to say never. I told you, to my knowledge.
Q. All right. Now, on this particular day you decided to turn at Oregon Street?
A. Yes, sir.
Q. And I believe that you told us that you saw the vehicle that you—
A. Yes, I did.
Q. —eventually had the accident with. Is that correct?
A. Yes, I did.
Q. Coming in your direction toward the intersection?
A. Yes, sir.
Q. And that vehicle was ten to twelve car lengths away?
A. Yes, sir.
Q. According to your testimony?
A. Yes, sir.
Q. And I think you’ve also told us that immediately before the accident you were going — you yourself were going very slow. Is that not correct?
A. Yes, I was.
Q. As a matter of fact, in answers to interrogatories, you told me five to ten miles an hour?
A. Slow.
*433 After carefully reviewing the record and especially plaintiffs testimony, we find that the damaged sign did not constitute a trap which deluded plaintiff into thinking she had an unqualified right of way. Therefore, plaintiff had a duty to keep a proper lookout as she entered the uncontrolled intersection. See Peterman v. City of Hammond, supra.
Further, plaintiffs own testimony established that she observed the vehicle traveling south on North Alexander Street, which was only ten to twelve car lengths from the intersection and which appeared to be approaching the intersection rapidly. Despite this knowledge and the fact that plaintiff was proceeding very slowly as she exited La. Highway 1, plaintiff proceeded into the intersection and collided with the approaching vehicle. Plaintiff did not approach the uncontrolled intersection with due care, and such failure was the sole cause of the accident.
Plaintiff contends that the failure to proceed cautiously into an intersection when traveling on the street controlled by a missing or damaged sign does not render her the sole cause of the accident, relying on Jerry Joseph Fontenot, Ind. v. State Through Department of Highways, 346 So.2d 849 (La.App. 1st Cir.1977), writ denied, 349 So.2d 1270 (La.1977) and Daigle v. Hanson, 476 So.2d 953 (La.App. 1st Cir.1985). However, both Jerry Joseph Fontenot, Ind. v. State Through Department of Highways, supra and Daigle v. Hanson, supra are clearly distinguishable from the instant case. In Daigle, the governing authority had constructive knowledge of the damaged and/or missing traffic control sign, and the court found there was insufficient evidence to establish why the decedent had entered into the intersection. In Fontenot, the governing authority also had constructive knowledge of the damaged and/or missing traffic sign, and there was nothing in the record to indicate that either plaintiff or defendant could have avoided the accident.
In the instant case, the governing authority did not have actual or constructive knowledge of the damaged yield sign or that the intersection posed an unreasonable risk of harm. There was no proof as to the length of time the sign had been damaged, nor was there proof of prior complaints or occurrences because of the damaged sign. Further, in the instant case, plaintiff observed the vehicle on North Alexander Street approach the intersection at a rapid speed. Plaintiff was proceeding very slowly and could have safely stopped her vehicle, but she presumed she had the right of way and proceeded into the path of the oncoming vehicle. As a result, plaintiff collided with the vehicle traveling on North Alexander Street.
We find that the damaged yield sign at the intersection of La. Highway 1 and Oregon Street was not the legal cause of the collision. Rather, plaintiffs action in proceeding into the intersection, after observing a rapidly approaching vehicle, without first determining that it was safe to do so was the legal cause of the collision. Accordingly, the Department is not liable for plaintiffs damages. See Dealey v. State, 448 So.2d 206 (La.App. 1st Cir.1984).
We recognize this accident occurred after the adoption of the comparative negligence doctrine in Louisiana. Nonetheless, though victim fault may no longer be a complete bar to recovery in strict liability cases,[1] a plaintiff still bears the burden of proving causation in a strict liability case, i.e., the claimant must prove that under the circumstances the “thing” presented an unreasonable risk of harm which resulted in the damage. Kent v. Gulf States Utilities Company, supra; Ponthier v. City of New Orleans, supra.
In the instant case, where there was no “trap” to motorists approaching the intersection, we conclude that the damaged yield sign did not create an “unreasonable risk of harm” within the meaning of LSA-C.C. art. 2317. Furthermore, because plaintiffs conduct (in proceeding into the *434 uncontrolled intersection after observing a rapidly approaching vehicle) was the sole legal cause of the accident, we conclude she is 100% at fault under a comparative negligence analysis. See Davis v. Eckert, 454 So.2d 275 (La.App. 4th Cir.1984), wherein the court exonerated the City from strict liability in an intersectional collision involving a defective traffic signal light and apportioned fault at 50% each to two motorists whose combined negligence had caused the accident.
Accordingly, we conclude the trial judge erred in apportioning fault between the Department and plaintiff under these circumstances.
CONCLUSION
Por the above reasons, the judgment of the trial court in favor of plaintiff and against the Department for $300,000.00 is reversed. The judgment in favor of plaintiff and intervenor and against the Department for $45,480.28 is also reversed. Plaintiff and intervenor are cast for all costs.
REVERSED.

. See Bell v. Jet Wheel Blast, Division of Ervin Industries, 462 So.2d 166 (La.1985) and its progeny.