532 So.2d 1154 (1988)
Mary Jo Oestriecher BRIGGS
v.
The HARTFORD INSURANCE CO., et al.
No. 88-C-0457.
Supreme Court of Louisiana.
October 31, 1988.
Rehearing Denied December 1, 1988.
*1155 Jerry Finley, Office of General Counsel, Baton Rouge, for applicant.
Guy Humphries, III, Humphries & Humphries, Alonzo Wilson, Wilson & Walker, Alexandria, for respondent.
MARCUS, Justice.
Mary Jo Oestriecher Briggs filed suit against the Rapides Parish Police Jury (parish), its insurer, Hartford Insurance Co., and the State of Louisiana, through the Department of Transportation and Development (DOTD), to recover damages for injuries she sustained as a result of a single-car accident.
The accident occurred in the rain at about eleven o'clock on the night of December 14, 1982, at the T-intersection of Louisiana Highway 498 (a state highway) and Construction Road (a Rapides Parish road). Construction Road is a lightly traveled, quarter mile long road with a twenty-five mile per hour speed limit, connecting La. 1 with La. 498. As Construction Road approaches La. 498, it inclines slightly. Plaintiff was proceeding on Construction Road toward the intersection. She apparently never saw the stop sign placed at the intersection by DOTD and proceeded through it without stopping. Her vehicle collided with trees on the far side of the intersection.
Prior to trial, a settlement was reached between plaintiff, the parish and Hartford, and the trial judge granted a judgment of partial dismissal as to these defendants. Plaintiff then proceeded solely against DOTD. After trial on the merits, the trial judge rendered judgment in favor of DOTD and against plaintiff finding that plaintiff failed to prove that the stop sign was obscured on the night of the accident. He further found that the intersection was not so dangerous as to require additional signing. As a result, he reasoned that the *1156 "cause of the accident must have been the plaintiff's own negligence." The court of appeal reversed finding that the trial judge was manifestly erroneous in his determination that plaintiff failed to prove the stop sign was obscured. The court held DOTD at fault for failing to keep the stop sign unobstructed and for failing to post additional signs at the intersection, but found plaintiff free from fault and rendered judgment in her favor. Since the trial court never reached the question of damages, the court of appeal fixed damages based on the record.[1] On DOTD's application, we granted certiorari to consider the correctness of that decision.[2]
The issues presented are whether DOTD is liable to plaintiff for her injuries and if so, (1) whether plaintiff's recovery should be reduced due to her own negligence and (2) whether the damage award is excessive.
Plaintiff alleges that DOTD is liable for her injuries under La.Civ.Code art. 2315 because of its negligence in failing to keep the stop sign unobstructed and in improperly signing the intersection. Alternatively, she argues that DOTD is strictly liable under La.Civ.Code art. 2317.
Liability under either article depends on whether the defendant breached a duty owed to the plaintiff. While the basis for determining the existence of the duty is different in art. 2315 ordinary negligence cases and art. 2317 strict liability cases, the duty which arises is the same. Myers v. State Farm Mutual Automobile Insurance Co., 493 So.2d 1170 (La.1986). DOTD's duty stems from its placing of the stop sign at the intersection:
It is well settled that a governmental authority that undertakes to control traffic at an intersection must exercise a high degree of care for the safety of the motoring public.
Gaspard v. Stutes, 380 So.2d 201, 204 (La. App. 3d Cir.1980). In addition, DOTD has a statutory duty to regulate the use of public highways. La.R.S. 48:21(A). However, DOTD is not a guarantor of the safety of travelers. In order to establish a breach of duty on DOTD's part under art. 2315, plaintiff must show that a hazardous condition existed, DOTD was actually or constructively aware of the hazardous condition, and DOTD failed to take corrective action within a reasonable time. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980).
The existence of a hazardous condition was disputed at trial. Plaintiff's expert, Duaine T. Evans, found the stop sign to be obscured and classified the intersection as "dangerous." His opinion was based on photographs of the scene taken in November 1983. On the other hand, DOTD's expert, Buck Morton, testified that in his opinion the stop sign was the only traffic control device necessary at the intersection, citing the short length of the road, its low speed limit, and the visibility of a tree line at the far end of the intersection. He based his opinion on a visual inspection of the scene made approximately a year and a half after the accident.
Since no contemporaneous photographs existed, the accuracy of those introduced into evidence were contested. Plaintiff introduced photographs taken in November 1983 (eleven months after the accident). Some of these photographs show the sign to be obscured by tree branches. DOTD claimed these photographs were not representative of the accident site, as they were taken before the change of seasons. Plaintiff also introduced photographs of the accident vehicle taken the day after the accident. The background of these show green foliage, with a trace of brown. These photographs were made after the car had been moved to a different location but in the same general area as the accident site.
DOTD introduced photographs taken in December 1983 and February 1984. These photographs show the stop sign to be unobscured and clearly visible. However, plaintiff introduced weather service data showing DOTD's photographs were taken after a period of unusually cold weather which affected the foliage. The weather in *1157 December 1982, by contrast, was relatively mild.
Tommy Eubanks, a long time friend of plaintiff's father, viewed the intersection the day after the accident. He found the foliage depicted in the November 1983 photographs to be "very close" to the foliage he saw in December 1982. He testified that DOTD's photographs did not accurately represent the foliage at the time of the accident.
We find plaintiff's November 1983 photographs to be more representative of the foliage as it existed at the accident scene than DOTD's December 1983 photographs. Although both sets of photographs were taken approximately one year after the accident, plaintiff's photographs were taken under more comparable weather conditions, as shown by official weather service records. DOTD's photographs, by contrast, were taken after an unusually severe freeze that would probably cause the trees to lose their leaves. In addition, the photographs of plaintiff's car taken the day after the accident tend to suggest that the foliage in this general region was still mostly green. The only testimony concerning the foliage at the time of the accident, although given by a friend of plaintiff's father, corroborates plaintiff's photographs. Based on this evidence, we find that plaintiff proved the stop sign was at least partially obscured resulting in the existence of a hazardous condition. The trial judge was clearly wrong in holding otherwise.
The evidence shows DOTD had constructive notice of the hazardous condition. DOTD's district traffic operations engineer testified that traffic controls were regularly inspected:
[W]e do have an obligation, and we have certain people that ride the roads, uh, at least every two weeks, every road in this state, as far as I know.
Governmental bodies are held to a standard of reasonable prudence and care in discovering hazards. St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273 (1964). Therefore, DOTD was charged with constructive notice of the hazard.
The evidence also shows DOTD failed to correct the hazardous condition within a reasonable time. The foliage that partially obscured the stop sign apparently had been there for some time. Darrell W. Blair, a resident of Construction Road for six years, testified after seeing the November 1983 photographs that the area was "grown up like this most of the time." Given the long-standing nature of the obstruction, it is obvious that DOTD did not correct the condition within a reasonable time.
As a result, we find plaintiff proved that DOTD breached its duty to her and therefore is liable under art. 2315. This finding makes it unneccessary to consider the applicability of strict liability under art. 2317. United States Fidelity and Guaranty Co. v. State, Department of Highways, 339 So.2d 780 (La.1976).
DOTD alleges that the parish was at fault for its failure either to maintain the stop sign or to sign the parish road. DOTD's right of way extended some twenty-five feet from the intersection. DOTD acknowledged it owned and maintained the stop sign on this right of way. Having installed the stop sign, DOTD had a continuing obligation to make sure the sign remained fit for its original purpose. Therefore, the parish could have reasonably assumed that DOTD had taken all responsibility for maintaining the stop sign. The testimony was clear that if the stop sign was maintained free of obstructions, given the low speed limit and small volume of traffic, no additional signs were needed on the parish road. Under these circumstances, we find the parish had no duty to plaintiff and therefore no liability under art. 2315 or 2317.[3]
*1158 Having found liability on the part of DOTD, the next issue is whether plaintiff's recovery should be reduced due to her own negligence. La.Civ.Code art. 2323.
Plaintiff was driving at night on an unfamiliar road, in the rain. She knew the intersection was coming up and that she would have to make a right turn. Under such circumstances, plaintiff should have been proceeding under the utmost caution. However, the evidence supports a contrary conclusion. The accident report filed by Trooper Doug Gremillion of the state police listed plaintiff's condition as "inattentive or distracted." Under the "Reason for Movement" section of the report, he checked "due to driver condition." He further listed "disregarding traffic control" as the primary contributing factor of the accident.
Plaintiff described herself as a recovering alcoholic and drug addict. She had started using drugs as a teenager and testified in detail about the variety of drugs she took on a regular basis. Although she was unclear as to whether she smoked marijuana on the day of the accident, she stated in her deposition that it was her "ritual" to smoke marijuana in the morning or afternoon and that it was "unlikely" she had not smoked that day. On the night of the accident, she set out to "score some Valium." She had purchased a mixed drink immediately prior to the accident, and had it cradled between her legs as she drove. Although there was no evidence that plaintiff was intoxicated at the time of the accident, her acknowledged drug abuse was certainly a fact to be considered in determining whether she was exercising the degree of care a reasonable person would use under the circumstances.
Plaintiff testified that she was driving slowly, her bright lights were on and her brakes were in good condition. Clearly, had plaintiff been maintaining a proper look out, she would have seen the stop sign even though it was partially obscured and would have been able to stop before reaching the intersection. We consider her negligent conduct to have been a substantial cause of the accident.
Applying the factors used by the court in Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985), we find plaintiff to be 70% at fault for the accident. We find DOTD to be 30% at fault for failing to correct the partially obscured stop sign.
The final issue is whether the record supports the damage award made by the court of appeal. DOTD contends that the award was excessive. Plaintiff was awarded $750 for the loss of her automobile, $2,000 for future medical expenses and $30,000 in general damages for permanent facial scarring and the fracture of her leg. DOTD was given a set-off totaling $941. Plaintiff, a twenty-two year old woman, suffered a six centimeter irregular laceration on her forehead, lacerations on both knees and a fracture of the distal tibia and fibula of her right leg. She was hospitalized for seven days, and her right leg remained in a cast for two or three months. There was evidence that plaintiff experienced substantial pain from her injuries and that she may require some minor cosmetic surgery in the future. Based on our review of the record, we do not find that the damage award was excessive.

DECREE
For the reasons assigned, the judgment of the court of appeal is amended to reduce DOTD's fault to 30%. The judgment is reversed insofar as it finds plaintiff free from fault. Plaintiff's fault is fixed at 70%. All costs at the trial and appellate levels are assessed against the parties in proportion to their respective percentages of fault. Otherwise, the judgment is affirmed.
LEMMON, J., concurs and assigns reasons.
WATSON, J., concurs in part and dissents in part and assigns reasons.
LEMMON, Justice, concurring.
I subscribe to the majority's reasoning that the Parish was not at fault because it *1159 was entitled to rely on DOTD to maintain the stop sign erected by DOTD within DOTD's right of way. I write separately to point out the intermediate court's error in declining to rule upon DOTD's claim for a reduction of its liability based on plaintiff's release of the Parish.
When a plaintiff releases a party that the evidence subsequently establishes is solidary liable for the damages, the plaintiff is deemed to have reduced the claim against the unreleased solidary obligor by the proportionate share of the debt owed by the released debtor. Harvey v. Travelers Insurance Co., 163 So.2d 915 (La.App. 3d Cir.1964). The court of appeal declined to address the Harvey issue in this case because DOTD had not entered a preliminary default and was not entitled to a default judgment on its third party demand against the Parish. It is not necessary, however, for the unreleased obligor to obtain a judgment against the released obligor (who was dismissed and did not participate in the trial) in order to be entitled to a proportionate reduction. It is the plaintiff's own action in releasing one obligor (and thereby depriving the other obligor of its right to enforce contribution) that precipitates the right of reduction. All that is required of the unreleased obligor is to prove at trial that the released obligor was concurrently at fault. Harvey v. Travelers Insurance Co., supra; Wall v. American Employers Insurance Co., 386 So.2d 79 (La.1980). If DOTD had met this burden of proof in the present case, it would have been entitled to a reduction of liability.
WATSON, Justice, concurring in part and dissenting in part.
Although I concur in the majority's conclusion that this is a case of comparative negligence, I dissent from the allocation of fault between Briggs and the DOTD.
On a dark and rainy night, this intersection would have been extremely hazardous to anyone not familiar with it. Construction Road inclines toward the intersection. Because of a deep curve, England Drive has a sharp decline. Since the trees on the opposite side of England Drive have no reflective qualities, Construction Road seems to disappear at the "T" intersection, leaving a black void. With the stop sign obscured, a nighttime driver like Briggs would not realize Construction Road ended past the incline. The stop sign has since been replaced by a sign with "high intensity".
Three witnesses testified that Mary Jo Briggs exhibited no signs of intoxication or impaired faculties after the accident. None testified to the contrary. Disregarding the confusion engendered by her personal history, there is little doubt that the intersection was unreasonably dangerous on the rainy night in question. However, the scenario of the accident indicates that Briggs should have been keeping a more careful lookout while driving on a dark and unfamiliar road in bad weather.
Briggs' fault and that of the DOTD should be considered in light of the factors in Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985).[1] Briggs' inattention was inadvertent, but her conduct created a great risk of harm to herself and others. Although the DOTD was in a superior position, controlling the intersection and its signing, the circumstances do not justify Briggs' complete failure to notice the apparent end of the road. However, it appears that her brakes locked and she could not stop on the wet surface. Under the circumstances, her comparative fault in causing her injuries should be fixed at no more than one-third. Cf. Murray v. Ramada Inns, 521 So.2d 1123 (La.1988).
The curious feature of this case is that the trial court found Briggs entirely at *1160 fault; the Court of Appeal held the DOTD completely responsible; and now the majority assigns the driver seventy percent and the DOTD thirty percent. Except for having rather bizarre character traits (except for truthfulness under oath), the plaintiff's negligence is difficult to pinpoint.
Therefore, I respectfully dissent as to the percentage of comparative fault.
NOTES
[1] 517 So.2d 1173 (La.App. 3d Cir.1987).
[2] 521 So.2d 1160 (La.1988).
[3] After the parish settled, DOTD requested a continuance in order to prove that the parish was at fault. DOTD contends this continuance was wrongfully denied. DOTD should have fully prepared its case prior to trial, including any defense that the parish was at fault. The parish's settlement should have had no effect on this defense. Further, in view of our finding of no duty on the parish's part, it is highly unlikely that DOTD could have produced evidence to show that the parish was at fault. Accordingly, we find the trial judge did not abuse his discretion in denying the continuance.
[1] "(1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties." 469 So.2d 967 at 974.