556 So.2d 123 (1990)
Rodney BOUDOIN
v.
The CITY OF KENNER, United States Fidelity and Guaranty Insurance Company and the Parish of Jefferson.
Consolidated with
ALLSTATE INSURANCE COMPANY
v.
Rodney BOUDOIN, et al.
Nos. 89-CA-539, 89-CA-540.
Court of Appeal of Louisiana, Fifth Circuit.
January 17, 1990.
*124 Barbara Stavis Wolf, New Orleans, for plaintiff-defendant in Reconvention & Appellee, Allstate Ins. Co.
T. Peter Breslin, Susan M. Chehardy, Elizabeth R. Gilliam, Metairie, for plaintiff-appellant.
James C. Murphy, Jr., New Orleans, Edmund W. Golden, Metairie, for defendants-appellees.
Before KLIEBERT, GRISBAUM and DUFRESNE, JJ.
DUFRESNE, Judge.
This is a missing "stop sign" case, Rodney Boudoin, plaintiff-appellant, was riding his motorcycle on a residential street in the City of Kenner at 20 to 25 miles per hour. He entered an intersection without slowing down and suddenly saw that a van, driven by Daniel Murray, was already in the intersection on the preferred crossing street. He laid the motorcycle down on its side in an attempt to stop, but nonetheless struck the side of the van about in the middle. The stop sign facing Boudoin was found lying on the ground a few feet from the street.
Boudoin sued Jefferson Parish, the City of Kenner and Murray and his insurer, Allstate Insurance Co., for injuries sustained in the accident. Allstate brought a separate action against Boudoin and Kenner on a subrogation claim of some $1,600, most of which was for damage to the van. These matters were consolidated, and after a judge trial, judgments were entered dismissing Boudoin's claims against all defendants, and awarding some $1,600, in favor of Allstate and against Boudoin. Boudoin now appeals both judgments. For the reasons which follow, we affirm these judgments.
Missing traffic sign cases have been analyzed under two theories of liability: negligence as per Civil Code Article 2315, and strict liability as per Article 2317. See e.g., Watson v. Dept. Transp. and Development, 529 So.2d 427 (La.App. 1st. Cir.1988); Ponthier v. City of New Orleans, 496 So.2d 1050 (La.App. 4th Cir.1986).
Under the negligence theory of art. 2315, the plaintiff bears the burden of showing, inter alia, that the public entity had knowledge of the problem, and failed to correct it within a reasonable time. Watson, supra. This knowledge may be actual, i.e. where the entity has been informed of or has discovered the defect, or constructive, i.e. where the defect has existed over a period of time and under such circumstances that in the exercise of due diligence the public body would have had notice of it, Pickens v. St. Tammany Parish Police Jury, 323 So.2d 430 (La.1975).
Prior to 1985, under the strict liability theory of art. 2317, knowledge by the public entity was irrelevant. The plaintiff only had to show that the defect in the thing which caused his injury presented an unreasonable risk of injury to others, and that the thing was in the custody or care of the public body, whether that body knew of the defect or not.
Jones v. City of Baton Rouge, 388 So.2d 737 (La.1980). However, La.R.S. 9:2800, effective July 12, 1985, now provides pertinently:
2800. Limitation of liability for public bodies
A. A public entity is responsible under Civil Code Article 2317 for damages *125 caused by the condition of buildings within its care and custody.
B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
C. Constructive notice shall mean the existence of facts which infer actual knowledge.
Because the accident at issue in the case before us happened on January 15, 1986, the above statute is applicable, Landry v. Board of Levee Commissioners of New Orleans, 477 So.2d 672 (La. 1985). Thus, to prevail under either a negligence or a strict liability theory, the plaintiff here had to show actual or constructive knowledge of the defect by the public entity.
There is no dispute that the downed stop sign was under the control of the City of Kenner, and not Jefferson Parish. Neither is there any real dispute that the Kenner authorities had no actual notice of the missing stop sign until two days after the accident, and that they replaced it within hours of receiving this notice.
As to constructive knowledge, the only eye-witness testimony as to the length of time the sign had been missing was given by Sadie Lamonte, a school bus driver who went through the intersection four times a day on her route. Her testimony was that she first noticed the missing sign on Monday, January 13, two days before the accident of Wednesday, January 15. She further noticed that the sign was back in place on Thursday, the day after the accident. She stated that when she noticed the problem she called a Jefferson Parish official to report the missing sign but was told by that official that the sign was a Kenner responsibility. She was given a telephone number in Kenner to call about the sign, but did not do so. She finally stated that she did not tell the Jefferson official the specific intersection where the sign was missing.
Delmas Bosarge, Jr., the Kenner traffic engineer, testified that his records showed that the first notice the city had of this missing sign was on January 17, two days after the accident, and the sign was replaced that same day. He further testified that all city streets are divided into five inspection zones, one for each day of the week, and the present intersection was in the Friday zone. He did not, however, have any log sheets showing that the intersection had actually been inspected on the Friday before the accident, nor did any inspector testify.
Boudoin testified that although he lived only a few blocks from the intersection, he had never been through it before. He admitted that as he got to the intersection, he could see 200 to 300 feet to his left, the direction from which Murray was coming, but a little bit back from the corner his view was obstructed by shrubbery. A photograph of the intersection shows, however, that aside from a few low bushes at the base of a telephone pole probably 30 to 40 feet from the street on which Boudoin was riding and 15 or 20 feet from Murray's street, the view was completely unobstructed for several blocks. Boudoin nonetheless admitted that he entered the intersection without slowing down, and did not see Murray's van until it was too late to stop.
On these facts, the trial judge found that the City of Kenner had neither actual nor constructive notice of the missing sign, and was therefore not liable for plaintiff's injuries. We find nothing manifestly erroneous in this finding.
Plaintiff argues, however, that because the city presented no logs or testimony to show that the sign had actually been checked on Friday and found to be in place, a finding of constructive knowledge should have been made. We disagree. It is plaintiff's burden to present evidence to establish that more probably than not the sign had been down for such a length of time and in such circumstances that the city *126 should have been aware of the problem through due diligence. As shown above, the only direct testimony bearing on how long the sign had been down, was that of Ms. Lamonte who went through the intersection four times per day on weekdays. She stated without equivocation that she first noticed the missing sign on Monday, noted the problem each day thereafter, and also noted that the sign had been replaced after several days. Thus, even without the testimony of Mr. Bosarge concerning the inspection routine, the very best that can be said of plaintiff's evidence is that it definitely showed the sign down on Monday, and allowed for the possibility that it may have been down as early as Friday afternoon, immediately after Ms. Lamonte had passed the intersection on her last school bus route. It could, of course, be suggested that the sign may have been down for days, weeks, or even months, before Ms. Lamonte noticed it. However, this would be mere speculation, and would not constitute a prima facie showing that the sign had been down for such a longer period of time. We thus find no clear error in the trial judge's apparent finding that more probably than not the sign was in place on the previous Friday afternoon and that it thus could not have been missing for more than five days before the accident. Considering the further circumstance that the intersection in question was located in a residential area, we cannot say that the trial judge erred in concluding that the city did not have constructive knowledge of the problem so as to render it liable to plaintiff.
The final issue concerns the judgment in favor of Allstate and against Boudoin. As the above facts show, the cause of the accident was Boudoin's negligence in approaching what appeared to be an uncontrolled intersection without ascertaining that it was safe to proceed, and without so much as slowing down to do so. Murray was already in the intersection, and Boudoin simply ran into him. On this showing, the trial judge did not err in finding Boudoin 100% at fault in causing the accident and therefore casting him in judgment for Murray's damages.
For the foregoing reasons, the judgments of the trial court are hereby affirmed.
AFFIRMED.