572 So.2d 150 (1990)
Marcellena JONES and Rodney Garland Jones
v.
Tracy Alan JOHNSON and The Insurance Company of the State of Pennsylvania.
William COURREGE
v.
Tracy Alan JOHNSON and The Insurance Company of the State of Pennsylvania.
Nos. CA 89 1314, CA 89 1315.
Court of Appeal of Louisiana, First Circuit.
November 14, 1990.
Rehearing Denied January 18, 1991.
Writs Denied March 28, 1991.
*151 J.J. McKernan, Baton Rouge, for plaintiff-appellee Marcellena Jones.
John Haas Weinstein, Opelousas, for plaintiff-appellee Rodney Garland Jones.
Ronald R. Thompson, Baton Rouge, for defendant-appellant State of La.
Before LOTTINGER, SHORTESS and CARTER, JJ.
LOTTINGER, Judge.
This is an appeal by the State of Louisiana through the Department of Transportation and Development (DOTD) from a judgment in favor of the plaintiffs. The plaintiffs, Marcellena Jones, Rodney Garland Jones, and William Courrege, originally filed two separate suits against Tracy Alan Johnson and his insurer for injuries they sustained in an automobile accident which occurred on October 31, 1985.[1] The state, through the Department of Transportation and Development (DOTD), was subsequently added as a defendant in those suits, and they were consolidated.
The plaintiffs then settled with and released defendant Johnson and his insurer, reserving their rights against the state. After a trial on the merits on the issues of the state's liability and quantum, the trial court held in favor of plaintiffs and against the state, assessing liability at eighty-five percent (85%) on the part of Tracy Alan Johnson and fifteen percent (15%) on the part of the state through DOTD. The trial court found that Mrs. Jones was entitled to eighty-two thousand one hundred fourteen and 80/100 dollars ($82,114.80) in total damages, and that Mr. Courrege was entitled to sixty-eight thousand fifty three and 36/100 dollars ($68,053.36) in total damages and rendered judgment in those amounts plus legal interest from date of judicial demand against the state through DOTD and in favor of each of those plaintiffs respectively.
The state appeals only the liability portion of the judgment, contending that the trial court erred in holding the state liable to plaintiffs.[2]

*152 FACTS
The accident at issue occurred on halloween night, 1985 at the intersection of La. 1 and La. 416 in Pointe Coupee Parish. It was a dark and overcast night, and La. 1 had just been resurfaced with "hot mix" type asphalt, which made the roadway surface very dark. Temporary reflective tape was in place down the center line of La. 1, and flashing yellow caution lights were in place above the intersection.
This intersection is a "Y" type intersection, the trunk and right fork of which is La. 1. The left fork is La. 416, which dead ends into La. 1 at this intersection. However, the "Y" in this intersection is not exactly symmetrical. To a motorist southbound on La. 1, approaching from the trunk of the "Y", the left fork (La. 416) appears to continue straight ahead while the right fork (La. 1) curves sharply to the right.[3]
Normally there are several signs visible to a southbound motorist on La. 1 leading up to the intersection, which indicate La. 1 curves to the right, lower the normal speed limit of 55 mph to 45 mph, and La. 416 is the left fork. On the night of the accident, however, these signs were not in place, but had been temporarily removed to facilitate the resurfacing and widening of La. 1. Large orange signs indicating that the area was "under construction" and reducing the speed limit to 45 mph were erected in the place of the signs which had been temporarily removed. Thus, a southbound driver on La. 1 who was unfamiliar with the area could very easily become confused as to which of the two forks was La. 1.
Adding to this already confusing situation was the fact that right in the crotch of the "Y" is a business establishment known as "Lake View Gas and Liquor." This building appears to a southbound motorist from a distance as being situated on the right side of La. 1 instead of on the left side or outside of the curve as it actually is. At night this illusion is particularly confusing because of the concentration of lights at this location.
On the night of the accident, Tracy Alan Johnson, one of the original defendants, was southbound on La. 1 in his 1978 Peterbilt 18-wheeler with a full load of pecans that he had just picked up in New Roads, La. Mr. Johnson intended to remain southbound on La. 1 and did not intend to turn onto La. 416. He was unfamiliar with the area, having passed that way only once, and then going in the opposite direction, on his way to pick up the pecans. The plaintiffs, Mrs. Jones and Mr. Courrege, were northbound on La. 1 in a 1976 Chevrolet Nova driven by Mr. Courrege.
As Mr. Johnson approached the intersection he saw what he perceived to be the headlights of a car coming into his lane from the right. In reality this was the Courrege vehicle coming around the curve northbound on La. 1. Mr. Courrege remained in his lane during this entire time and was never in Mr. Johnson's lane.
In reaction to what he thought was a car coming into his lane from the right, Mr. Johnson locked up his brakes and tried to steer to the left. He skidded straight through the curve, veering slightly to the left and collided with the Courrege vehicle at the apex of the curve. The point of impact was right in the fork of the "Y" and completely within the northbound lane of La. 1, the Courrege vehicle's lane. The skid marks left by Mr. Johnson's truck were 186 feet in length, and the angle at which the truck crossed the center line of La. 1 was almost directly in line with La. 416. This is consistent with the plaintiff's theory that Mr. Johnson was unaware that La. 1 curved sharply to the right but rather thought that La. 1 continued straight ahead in the direction of what is actually La. 416.
*153 Based on the skid marks left by each of the vehicles, the accident reconstruction expert[4] testified that Mr. Johnson was going at least 57 mph when he first applied his brakes and was probably going somewhat faster. Mr. Johnson denied that he was going that fast, but admitted that at such a speed it would have been impossible for him to negotiate the sharp right hand curve in La. 1 without overturning. Mr. Johnson further admitted that he did not realize that La. 1 curved to the right until he was about 100 feet from the intersection.
Mr. Courrege's vehicle left skid marks 26 feet long. The accident reconstruction expert testified that this would indicate that the Courrege vehicle was traveling at approximately 27 mph when its brakes were applied, assuming that it had come to a complete stop by the time of impact. This expert further testified that based on the damage to the Courrege vehicle it appeared that it was nearly stopped or had very little velocity left at the time of impact.[5] He also testified that the Courrege vehicle might have been going a maximum of 40 mph immediately before it started skidding, and that the position and angle of the Courrege vehicle's skid marks made it physically impossible for it to have been in the southbound lane within at least 4 seconds prior to the skid.

FINDINGS OF THE TRIAL COURT
At the conclusion of the trial the trial court found that Mr. Courrege was free from fault and that Mr. Johnson was driving at an excessive rate of speed and was the primary cause of the accident and plaintiffs' injuries. The trial court withheld a ruling on the state's liability and percentage of fault, if any, until the parties had filed post trial briefs.
Subsequent to the parties' post trial briefs, the trial court held that Mr. Johnson was not aware of the curve until it was too late to negotiate it at the speed at which he was traveling. The trial court further held that the absence of adequate signs indicating the presence of the curve was a contributing factor to the accident. The trial judge stated in his written reasons for judgment that:
"[T]he presence of adequate signing would have warned Mr. Johnson of the approaching curve so that he could have adjusted his speed in order to negotiate the curve, and so that he could properly interpret the confusing lights and physical surroundings. While Mr. Johnson was apparently willing to ignore the forty-five (45) miles per hour speed limit on the construction signs, we [sic] cannot assume that he would have ignored a curve sign with the knowledge that he risked turning over if he did not reduce his speed around the curve. The fault of both partiesJohnson and the Department of Transportationcontributed to the accident."
The trial court went on to apportion the respective fault of Mr. Johnson and the DOTD at 85% to Mr. Johnson, for his excessive speed and failure to maintain control, and 15% to the DOTD for failing to have adequate signs in place warning of the curve. Thereafter, the trial court considered the various injuries and medical bills incurred by the plaintiffs and held that each plaintiff was entitled to the amount previously set forth in total damages. A judgment was signed accordingly in favor of plaintiffs and against the state.
The state now appeals and assigns the following specifications of error:

*154 I. The trial court committed manifest error of fact and of law by finding that a defect (absence of a curve advisory sign while the roadway was under construction) existed at the intersection [of] La. highway 416 and highway 1, which caused the accident complained of.
II. The trial court committed a manifest error of fact and of law by finding that the cause of this accident was contributed to by the State of Louisiana and that any defect constituted an "unreasonable" risk.
III. The trial court committed manifest error by finding that the State, [through] DOTD had actual or constructive notice of a defect and failed within a reasonable time to correct said defect.
IV. The trial court committed manifest error by utilizing or relying upon the testimony of an expert witness as opposed to an eye witness to the accident.

LAW
A cursory examination of the jurisprudence dealing with the liability of the DOTD in cases such as this one involving missing, obscured, or otherwise defective traffic control devices, or defective roadways, reveals that two apparently different analyses have been employed.
These two analyses, or tests, are the duty/risk analysis and the 2317 strict liability type analysis. The duty/risk analysis is strictly a test of negligence, while the 2317 strict liability type analysis can be used both to determine negligence and strict liability with only a slight modification.
Under the duty/risk analysis the following inquiries must be answered in the affirmative before the plaintiff can recover:
1. Was the conduct in question a cause-in-fact of the resulting harm?
2. Was there a duty owed by the defendant to protect the plaintiff from this type of harm arising in this manner?
3. Did the defendant violate the duty owed?
Under the 2317 strict liability type analysis the plaintiff must prove that:
1. The defendant owned or had custody of the thing which caused the damage;
2. The thing was defective in that it created an unreasonable risk of harm to others; and
3. Causation.
When this test is used to determine negligence, the plaintiff must also prove that the defendant had actual or constructive knowledge of the defect or risk of harm posed thereby and failed to take corrective action within a reasonable time.[6] In cases where strict liability is not an issue, a pure duty/risk approach is utilized. See, Trahan v. State Department of Transportation and Development, 536 So.2d 1269 (La. App.3rd Cir.1988), writ denied, 541 So.2d 854 (La.1989); and, Naylor v. Louisiana Department of Public Highways, 423 So.2d 674 (La.App. 1st Cir.1982), writ denied, 429 So.2d 127, 134 (La.1983).
Where both strict liability and negligence theories are viable, most cases use the 2317 strict liability type analysis to decide liability under both theories, the only distinction being that under strict liability the plaintiff need not prove that the defendant had actual or constructive knowledge of the defect or risk of harm posed thereby and failed to take corrective action within a reasonable time. See, Watson v. State Department of Transportation and Development, 529 So.2d 427 (La.App. 1st Cir.), writ denied, 533 So.2d 361 (La.1988); Burge v. City of Hammond, 509 So.2d 151 (La.App. 1st Cir.) writ denied, 513 So.2d 285 (La.1987); and, Cosper v. State Department of Transportation and Development, 492 So.2d 243 (La.App.3rd Cir.1986).
In at least one case both analyses were utilized; duty/risk to determine whether the department was negligent, and the *155 2317 type analysis to determine if it was strictly liable. See, Williams v. Anthony, 534 So.2d 458 (La.App. 1st Cir.1988).
However, these two analyses, or tests, are but two ways of determining whether liability exists. Under either a negligence or strict liability theory, liability always depends on whether the defendant has breached a duty owed to the plaintiff. Briggs, 532 So.2d at 1156; Myers v. State Farm Mutual Automobile Insurance Co., 493 So.2d 1170 (La.1986). Therefore, although the analytical method used to determine the existence of the duty and whether it was breached is different under each of the two tests, the duty which arises is the same under both the theories of negligence and strict liability. Briggs; Myers.
A comparison of the two tests bears this out. That the conduct/thing complained of was a cause-in-fact of the plaintiff's harm is an element of both tests. In order to prove that the defendant has breached a duty owed to the plaintiff utilizing the 2317 type analysis the plaintiff must show that the thing was defective in that it created an unreasonable risk of harm to others, and that the defendant had actual or constructive knowledge of the defect or risk posed thereby and failed to take corrective action within a reasonable time. Briggs, 532 So.2d at 1156.
The question of whether the defendant owed a duty to protect the plaintiff from the particular type of harm arising in the manner in which it did, is a question of law. In a case such as this against the DOTD, and where a 2317 type analysis is utilized, to establish the existence of a duty the plaintiff need only prove that the DOTD had custody of the allegedly defective roadway or traffic control device. Once this is established, the court will apply the well settled principle that the DOTD has a duty to maintain the public highways in a condition that is reasonably safe not only for persons exercising ordinary care and reasonable prudence, but also for those who are slightly exceeding the speed limit or who are momentarily inattentive. Ledbetter v. State Department of Transportation and Development, 502 So.2d 1383, 1387 (La.1987); Trahan, 536 So.2d at 1273. However, we note that this duty does not extend to protect motorists against harm which would not have occurred but for their grossly negligent operation of a motor vehicle. Burge, 509 So.2d at 156.
Therefore, it does not matter which analysis is used to determine liability; the result should be the same under either one. Although the DOTD has couched their assignments of error in the terms of the 2317 type analysis, we will utilize elements of both analyses in this opinion.

ASSIGNMENT OF ERROR ONE
By this assignment of error the DOTD contends that the trial court erred in finding that the absence of curve advisory signs at the intersection in question constituted a defect or unreasonably dangerous condition.
It was established beyond a doubt at trial, and the DOTD concedes in its brief, that there were no signs warning southbound motorists of the curve or even of the existence of the intersection at the time of the accident. The only traffic control devices in place at the time of the accident were the large orange "under construction" signs and "45 mph" signs, a "no passing zone" sign, and the flashing yellow caution light strung over the intersection. While the caution light may have indicated an intersection, this was not clear in the absence of clarifying signs; and there was no warning whatsoever that La. 1 curved to the right.
The existence of an unreasonably dangerous condition is one element of the breach-of-duty prong of the duty/risk analysis.[7] Assuming that the DOTD had a duty to warn motorists of the intersection and curve, and that this duty extended to protect the plaintiffs from the harm that *156 befell them,[8] the complete absence of signs warning of the curve tends to indicate that the duty was breached.
The trial court found that the curve in question was "very dangerous at night" and that given the confusing appearance of the intersection and curve at night that "the removal of signs during construction is difficult to justify." In light of the expert testimony and numerous photographs of the scene in the record,[9] we cannot say that the trial court was clearly wrong in holding that the complete absence of curve advisory signs created an unreasonably dangerous condition. This assignment of error is without merit.

ASSIGNMENT OF ERROR TWO
By this assignment of error the DOTD contends that the trial court erred in holding "that the cause of this accident was contributed to by the State of Louisiana." We take this to be an assertation that the lack of curve advisory signs was not a cause-in-fact of the accident and plaintiff's injuries.[10]
Based on the admission of Mr. Johnson, the driver of the eighteen wheeler, that he could not have negotiated the curve at the speed that the accident reconstruction expert testified he was going when he applied his brakes, but would either have to go straight or turn over, the trial court held that Mr. Johnson was not aware of the curve until it was too late. The trial court further held that more likely than not, if the curve advisory signs would have been in place Mr. Johnson would have reduced his speed and been able to negotiate the curve.
We agree that the lack of curve advisory signs leading up to the curve at issue was a cause-in-fact of plaintiff's injuries. This conclusion is not manifestly erroneous. See, Ledbetter, 502 So.2d at 1388; and Trahan, 536 So.2d at 1272-73. This assignment of error is without merit.

ASSIGNMENT OF ERROR THREE
By this assignment of error the DOTD contends that it did not have actual or constructive notice of a defect nor failed to correct it within a reasonable time.[11]
The DOTD has a statutorily imposed duty to maintain the public roads and highways in a reasonably safe condition. La. R.S. 48:21; Robinson v. State Department of Transportation and Development, 454 So.2d 257 (La.App. 1st Cir.), writ denied, 458 So.2d 122 (La.1984). We have held that the DOTD cannot contract away this duty to a private concern, and that notwithstanding the contractual duty of a contractor to perform maintenance on state highways, the DOTD is not relieved of its fundamental responsibility to insure that the maintenance *157 work is properly performed. Robinson, 454 So.2d at 261-62.
It is undisputed that the contractor hired by the DOTD to resurface and widen La. 1 removed the curve advisory signs. It was the absence of these signs which created the unreasonably dangerous condition. Therefore, even if the DOTD did not have actual notice that the curve advisory signs had been removed by its contractor, the DOTD must be held to have had at least constructive notice of the removal of the signs.[12]
There was no evidence introduced as to exactly when the signs had been removed. However, since the DOTD's own contractor removed the signs, and the DOTD had constructive notice of their removal, and such removal created an unreasonably dangerous hazard to nighttime motorists, the failure to replace the signs or erect temporary substitutes on the first night following their removal, and each subsequent night thereafter, evinces the DOTD's failure to take corrective action within a reasonable time.
This assignment of error is without merit.

ASSIGNMENT OF ERROR FOUR
By this assignment of error the DOTD contends that the trial court erred by relying on the testimony of the plaintiff's expert witness instead of an eyewitness to the accident, the released co-defendant and driver of the eighteen-wheeler, Mr. Johnson.
Determinations as to the credibility of witnesses is a function peculiarly within the province of the finder of fact and will not be reversed by an appellate court absent manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
Mr. Johnson testified that he was not speeding, that he was not confused by the intersection, and that the reason he slammed on his brakes and tried to steer to the left is because he thought the plaintiff's vehicle was coming over into his lane. Mr. Johnson also admitted that if he had in fact been going the speed that the plaintiff's expert said he was, that he would have been unable to negotiate the curve without overturning. He further testified that he first saw the plaintiff's vehicle prior to the time that he realized that the road curved to the right, and that he realized that the road curved to the right when he was about one hundred feet from the start of the curve, or when it was within the illuminated area of his headlights.
Mr. Dale Moore, the plaintiff's accident reconstruction expert, testified that, based on the skid marks left by the Courrege vehicle, it would have been physically impossible for that vehicle to have been in the left lane immediately prior to the application of its brakes.[13] He also testified that, based on Mr. Johnson's skid marks of one hundred eighty six feet, Mr. Johnson was going at least fifty-seven miles-per-hour when he applied his brakes.
The trial court believed the testimony of Mr. Moore with regard to whether or not the Courrege vehicle was ever in Mr. Johnson's lane. The trial court was of the opinion that Mr. Johnson was confused by the intersection, since he thought that the Courrege vehicle was coming into his lane even though the physical evidence established that it remained in the proper lane up until the time of impact.
The trial court also believed Mr. Moore's testimony as to the speed of Mr. Johnson's vehicle. Based on this speed, together with the foregoing evidence, the trial court concluded that the only reasonable explanation was that Mr. Johnson was not aware of the curve until it was too late. The trial court went on to find that the presence of adequate signs would have warned Mr. Johnson of the curve and prompted him to slow down in time to avoid the accident.
In this case the trial court accepted Mr. Moore's testimony as true and discounted Mr. Johnson's testimony on two crucial issues; *158 which lane was the Courrege vehicle in immediately prior to the accident, and how fast was the Johnson vehicle going when its brakes were applied. On both of these issues Mr. Moore's testimony was supported by physical evidence, the skid marks left by the vehicles. Additionally, Mr. Courrege's testimony supported Mr. Moore's on the issue of what lane the Courrege vehicle was in.
Since the trial court had a reasonable factual basis for its findings on these issues, and its findings are not clearly erroneous, we cannot overturn them. This assignment of error is without merit.

AMOUNT OF THE JUDGMENT RENDERED AGAINST THE DOTD
As we indicated in footnote two, the DOTD does not complain that they were cast in judgment for the full amount of plaintiffs' damages although found to be only 15% at fault. Notwithstanding this, and based upon La.Code Civ.P. art. 2164, which provides in part that "[t]he appellate court shall render any judgment which is just, legal, and proper upon the record on appeal," and clear jurisprudence which indicates that the DOTD should have only been cast in judgment for 15% of the plaintiffs' damages, we hereby amend the judgment of the trial court to reflect an 85% reduction in the amount awarded to the plaintiffs and against the DOTD.
The judgment against the DOTD is hereby reduced to Twelve Thousand Three Hundred Seventeen and 22/100 ($12,317.22) Dollars in favor of Mrs. Jones and Ten Thousand Two Hundred Eight and 00/100 ($10,208.00) in favor of Mr. Courrege.
For the above and foregoing reasons the judgment of the trial court is amended in part and affirmed as amended. Costs of this appeal in the amount of $4,106.55 are to be paid by the DOTD.
AMENDED IN PART AND AFFIRMED.
SHORTESS, J., concurs.
NOTES
[1] Rodney Garland Jones was not a passenger in any of the vehicles involved in the accident. Rather, he sought loss of consortium damages arising out of the injuries suffered by Mrs. Jones. However, no evidence of his damages were adduced at trial, and consequently the trial court did not award him any damages. Since he has not appealed or answered the DOTD's appeal, this part of the judgment is now final.
[2] Although the DOTD does not contest the amount of the judgment rendered against it notwithstanding the fact that it was cast for the total amount of plaintiff's damages yet found only 15% at fault, we will amend the judgment to cast the DOTD with only 15% of the plaintiffs' total damages based on La.Code Civ.P. art. 2164 and the applicable jurisprudence. See Dill v. State Department of Transportation and Development, 545 So.2d 994, 997, (La.1989); Briggs v. Hartford Insurance Co., 532 So.2d 1154, 1159 (La.1988), (Lemmon, J., concurring); and Woods v. Ratliff, 407 So.2d 1375 (La.App. 1st Cir.1981).
[3] Mr. James R. Clary, Sr., a civil engineer and expert in highway design and highway safety testified that he measured the curvature of the curve and found it to be about eight degrees. He further testified that this amount of curvature was in excess of that allowed in the construction of new highways since 1946. He characterized the curve as very sharp, and the intersection as dangerous. Mr. Thomas Buckley, DOTD's district traffic operations engineer, testified that the original plans for La. 1 showed a curvature of six degrees when the highway was originally constructed in 1931 or 1932.
[4] The trial court accepted as true most of the testimony of Mr. Dale Moore, the accident reconstruction expert who testified on behalf of the plaintiffs. As this testimony was almost entirely unrebutted and is very plausible, we also accept it as true.
[5] The collision between these two vehicles was not directly head-on but rather at a slight angle. The 18-wheeler first impacted the left front corner of the Nova and proceeded to run completely over the hood of the car, going from the front left to the right rear of the hood. Fortunately, the passenger compartment of the Nova, although damaged, remained intact, otherwise the plaintiffs would have surely suffered far more serious injuries than they did.

From this the accident reconstruction expert was able to deduce that the plaintiff's car was almost completely stopped at the moment of impact.
[6] La.R.S. 9:2800 provides, however, that even under a strict liability theory, when the defendant is a public entity, the plaintiff must prove that the defendant had actual or constructive knowledge of the vice or defect and failed to remedy it within a reasonable time. Therefore, the plaintiffs in this case must prove actual or constructive notice of the defect and a failure to remedy it within a reasonable time on the part of the DOTD in order to recover.
[7] Briggs, 532 So.2d at 1156. The remaining elements, whether the DOTD had notice of the defect, and failed to correct it within a reasonable time, is the subject of assignment of error three.
[8] The DOTD does not argue that it did not have custody of the highway in question, together with the concurrent duty to warn motorists of the intersection and curve, nor that the duty did not extend to protect the plaintiffs from the type of harm which occurred. Indeed, the jurisprudence is replete with cases holding that such a duty does exist; See, Briggs, 532 So.2d 1154, Vervik v. State Department of Highways, 302 So.2d 895 (La.1974); Trahan, 536 So.2d 1269; Watson, 529 So.2d 427; and that it extends to plaintiffs such as the ones in this case; Ledbetter, 502 So.2d 1383; Burge, 509 So.2d 151.
[9] The record contains numerous photographs of the accident scene taken both on the night of the accident and the following day. The trial judge also indicated that he was himself familiar with the curve at issue and that he travels it almost every day.
[10] Legal cause, on the other hand, is synonymous with the defendant's breach of a duty that extends to protect the plaintiff from the type and manner of harm complained of. See, Watson; and Burge. It is clear to us that the DOTD did have a duty to maintain curve advisory signs to warn motorists of the curve at issue, and that it breached this duty. See, Vervik, and Trahan. Likewise, that duty clearly extended to protect the plaintiffs in this case, who were completely free from fault, from the risk that a slightly inattentive motorist who was exceeding the speed limit to some degree would not see this virtually unmarked curve at night until it was too late to negotiate it and as a result run off the road and injure innocent parties such as the plaintiffs. See, Trahan; and, Burge.
[11] These are the two remaining elements of the breach of duty prong of the duty/risk analysis, in addition to being an element of the 2317 strict liability type analysis. See footnote 7 and accompanying text above.
[12] We express no opinion as to the liability of the contractor, either to the plaintiffs, or to the DOTD, contractually or otherwise, as this was not an issue at trial.
[13] Mr. Courrege was also adamant in his testimony that he was in his lane the entire time and never crossed over into the southbound lane.